96   591
130  641
96   591
171  572

96      591
187   3609

</div>

ELMER BOHANAN *et al.*

*v.*

MAJOR S. BOHANAN.

*Filed at Ottawa November 17,*

1. SPECIFIC PERFORMANCE. Before a court of equity will enforce the specific performance of an alleged contract, not in writing, for the conveyance of land, it must clearly appear that a contract was entered into, and its terms and conditions must be clearly established by proof.

2. SAME—*of the consideration.* A parol promise to convey a tract of land, made by a father to his son, may be enforced in equity where the son has taken possession of the land under the contract, and expended money in making valuable and lasting improvements. Such a promise rests on a valuable consideration.

3. In this case father and son, with their respective families, were living together upon the farm of the former. A disagreement arising between the families, the son proposed to leave the premises and remove to another State, his wife's father offering him $1000 to aid him in so doing. The father of the young man not wishing his son to move away, and as inducement for him to remain, offered to purchase for him a certain tract of land in the neighborhood. The son accepted this proposition and abandoned his contemplated removal, and relinquished the $1000 offered to him by his father-in-law. His

father purchased the land as he had promised, but took the deed in his own name. The son went into possession under the contract, repaired the house on the premises, and the fences, made gates, put a pump in the well, and made other improvements of like character, and raised a crop upon the land, but before his family came into the occupancy he died. Upon bill filed by his children and heirs-at-law, to compel a conveyance of the land by their grandfather holding the legal title, it was *held,* the relinquishment by the son of the $1000 offered him by his wife's father, upon abandoning his proposed removal, was a sufficient consideration for the promise of his father to convey the land, and having taken possession under that promise, he was entitled to a conveyance.

APPEAL from the Circuit Court of Peoria county; the Hon. D. McCULLOCH, Judge, presiding.

Messrs. COOPER & TENNERY, for the appellants:

Part performance will take a parol purchase of land out of the Statute of Frauds. Payment of purchase money and taking possession and making valuable improvements sufficient. *Hawkins* v. *Kent,* 14 Ill. 43; *Ramsay* v. *Liston,* 25 id. 114; *Deniston* v. *Hoagland,* 67 id. 266; *Atkinson* v. *Tanner,* 68 id. 247; *Parkhurst* v. *Van Courtland,* 14 Johns. 15; *Freeman* v. *Freeman,* 43 N. Y. 34; *Annam* v. *Merritt,* 13 Conn. 479; *Farrar* v. *Patton,* 20 Mo. 81; *Peckham* v. *Berkham,* 8 R. I. 17; 1 Lead. Cases, part 11, p. 1045.

Parol promise by a father, without consideration, to convey to a child will not be enforced unless there is a part performance. But when the child takes possession and makes valuable improvements, it will be enforced. *Kurtz* v. *Hibner,* 55 Ill. 514.

Such a promise rests upon a valuable consideration, to-wit, the making valuable improvements. *Bright* v *Bright,* 41 Ill. 97; *Lessee of Tyler* v. *Eckhart,* 1 Binn. 378; *Ford* v. *Ellingwood,* 3 Metc. (Ky.) 359; *King's Heirs* v. *Thompson,* 9 Pet. 204; *Young* v. *Glendenning,* 6 Watts, 509; *Woods* v. *Thornley,* 58 Ill. 468.

If one of the contracting parties so act that, if the contract be abandoned, the other can not be restored to his former

position, equity will consider the contract as perfected and a refusal to complete it a fraud. Adams Eq. 86.

The contract between Major S. Bohanan and his son James, was complete when James accepted his father's offer of the forty acres and relinquished his intention of going to Nebraska, and the proffered offer of $1000 by his father-in-law.

Where a promise operates as a continuing request, compliance with the request is a sufficient consideration for the promise. 2 Lead. Cases in Eq. part 2, p. 1082; *Old Colony R. R.* v. *Evans*, 6 Gray, 26; *Perkins* v. *Hadsell*, 50 Ill. 216.

Messrs. PUTERBAUGH & PUTERBAUGH, for the appellee:

1. A resulting trust can not be created by contract between the parties, but it is an implication of law arising from the fact that the land was purchased with the money of one, and the conveyance made to another party. *Williams* v. *Brown*, 14 Ill. 202; *Green* v. *Cook*, 29 id. 193; *Loomis* v. *Loomis*, 28 id. 456; *Sheldon* v. *Harding*, 44 id. 73; *Remington* v. *Campbell*, 60 id. 516.

No arrangement subsequent to the purchase, nor any parol agreement existing before, nor any parol admissions made at the time of purchase, will raise a trust in the absence of any other fraud than that which arises from a violation of a parol agreement, if the purchaser pays his own money and takes the title to himself. *Perry* v. *McHenry*, 13 Ill. 227; *Fleming* v. *McHall*, 47 id. 287; *Walter* v. *Klock*, 55 id. 365.

2. Before a court of equity will enforce the specific performance of a verbal agreement, the proof must clearly establish a contract, and all its terms and conditions, and that the purchaser has relied upon and performed his part of the agreement, and that it has been so far performed as to take it out of the Statute of Frauds. *Hartwell* v. *Black*, 48 Ill. 301; *Gossee* v. *Jones*, 73 id. 509; *Bailey* v. *Edmunds*, 64 id. 125; *Allen* v. *Webb*, 64 id. 342.

The payment of the purchase money is not sufficient to take the case out of the Statute of Frauds. *Temple* v. *Johnson,* 71 Ill. 16; Story's Eq. Jur. sec. 760.

Possession must be taken under the parol contract relied on. It is not sufficient that he was in possession under a prior lease. *Wood* v. *Thornley,* 58 Ill. 469; *Toe* v. *Toe,* 3 Grant's Cases, 74.

The improvements and expenditure incurred must have been in consequence of the promise. *Bright* v. *Bright,* 41 Ill. 101.

In this case there was no purchase money paid,—no possession except such as is referable to possession as tenant of his father,—and no valuable and lasting improvements made. Unless all these three elements concur, no relief will be granted. *Perkins* v. *Hadsell,* 50 Ill. 216; *Sutherland* v. *Perkins,* 75 id. 339; *Temple* v. *Johnson,* 71 id. 16.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Elmer Bohanan, Clara B. Bohanan, and Jannery A. Bohanan, children and heirs-at-law of James W. Bohanan, in the circuit court of Peoria county, against Major S. Bohanan, to enforce the conveyance of forty acres of land in Peoria county. It is alleged in the bill that Martha E. Hovenden was married to James W. Bohanan, a son of Major S. Bohanan, in September, 1867; that he and his wife lived in the same house with Major S. Bohanan for about two years, and rented his farm of one hundred and sixty acres, in Peoria county, paying one-half of the crops as rent; that during the time the father and son jointly built a new double house on the farm for the use and occupation of the two families.

After the house was completed it was occupied, for a time, by both families, but, owing to some disagreement between the families, James concluded to leave the home and move to Nebraska. Major S. Bohanan opposed this movement on the part of James and tried to induce him not to go, and in

March, 1871, promised, if he would stay, to buy for him the north-east quarter of the south-east quarter of section 32, township 9 north, range 6 east, in Peoria county, the land adjoining the one hundred and sixty acre tract owned and occupied by Major S. Bohanan,—in consideration of which offer, James agreed not to go away. That in pursuance of his promise, Major S. Bohanan bought the forty acre tract and obtained a deed on the 19th day of February, 1872. That upon the execution of the deed, which was made to Major S. Bohanan, James took possession of the land and commenced to make improvements, both temporary and permanent, thereon,—repaired fences and buildings, put in a pump, and plowed and cultivated and raised a crop on the land.

It is also alleged that some time after the execution of the deed, James learned that the deed was made to his father instead of himself; that he then saw his father, who promised to deed the land to him as soon as he moved on it; that it was then the understanding that James should move on the · land in the fall of 1872; that on the 6th day of October, 1872, while in possession of the land, but before moving on, James died, leaving his three children, the complainants in the bill.

In the answer the defendant, Major S. Bohanan, denies promising to buy the land for James if he would not go to Nebraska, and that in consideration of such promise James relinquished his purpose, and consented to remain with the defendant. The defendant admits that he agreed to purchase the land for James, with the condition that defendant should have the use of it during his life, and that James should move upon said land and cultivate all of said defendant's land, giving him rent therefor. The defendant also sets up and relies upon the Statute of Frauds.

It may be regarded as a well established rule, that before a court of equity will enforce the specific performance of a contract for the conveyance of land, not in writing, it must

clearly appear that a contract was entered into, and its terms and conditions must be clearly established by proof. *Hartwell* v. *Black*, 48 Ill. 301.

The first question to be considered is, whether a contract has been established. There is no doubt but a contract was made by Major S. Bohanan with his son James in regard to the land, but there is a controversy between the parties in regard to the terms of the contract. The complainants contend the land was to be conveyed in fee, while the defendant claims that James was to move upon and occupy the land and pay rent during the lifetime of defendant, and at his death have the fee.

Martha E. Bohanan, the widow of James Bohanan, in substance testified that after their marriage they lived two years on defendant's farm; that her husband rented his father's farm on shares; that a double house had been erected, in which the families resided. On account of difficulty between the two families her husband concluded to move to Nebraska; that they made preparations to start, when Major S. Bohanan begged them to stay, and said if her husband would stay, he would buy for him the land in question. She also testified that James accepted the offer and gave up going to Nebraska. "When her husband was about to start for Nebraska, and before the old man induced him to remain, her father, George Hovenden, agreed to give him $1000 to start him in Nebraska. He gave up this offer, at the request of the old man, and accepted his in preference."

Thomas Clenils testified, in substance, that in the spring of 1871, James talked of going to Nebraska, and he understood from him and his father that the reason he did not go was that his father purchased for him a forty acre tract from Mrs. Standeven.

William Wykoff testified that he knew James was going to Nebraska about February, 1871, and learned from him and his father that the reason that he did not go was because his

father induced him to remain by purchasing for him forty acres from Mrs. Standeven. After Mrs. Standeven moved away from the forty acre tract, he saw James and his hired man at work on the premises, repairing fences, and he always understood the land was purchased for James.

Mrs. Standeven testified, " I sold him (Bohanan) the forty acre tract in 1871, giving him a bond for a deed, and made him a deed in 1872. When I gave him the bond, he said he had come over to buy my land; that James had engaged a car to take his goods to Nebraska, and that he was an only son, and he couldn't bear the idea of James going away. He said James' object was to get more land, and that he was buying this forty acre tract expressly for James; that he thought James would remain if he bought the land for him." She also testified, when she delivered the deed to defendant, " He looked at it and said it was made out to the wrong party, that it should have been made to his son James."

George T. Wasson testified that he had a conversation with Major S. Bohanan, in which he said James had become dissatisfied and talked of going away. He asked him if he would stay if he bought for him the Standeven forty, and he said he would, and that he had done so.

Other evidence of a similar character was introduced, but it will not be necessary to refer to it here, as the evidence seems to concur in the fact that Major S. Bohanan agreed with his son, if he would not go to Nebraska, to give him the land. It is true that the defendant in the bill testified that James was to move on the land and give one-half of the crop during the lifetime of the witness, and at his death have the absolute title, and in this he is corroborated by Edward Bohanan, his brother, who testified that in 1872 James told him he was to move on the land and farm it on shares, and upon defendant's death he was to receive it for his share; but the preponderance of the testimony is clearly opposed to this view.

The testimony of the widow of the deceased establishes a contract between the defendant and his son James, under

which the latter gave up his contemplated removal to Nebraska and relinquished an offer of $1000 from his wife's father, in consideration that the defendant would purchase and convey to him the land in controversy. In pursuance of the contract the defendant purchased the land of the owner, and James, in the spring of 1872, went into the possession and made improvements on the property. The house was repaired, the fences fixed up, gates made, a pump put in the well, and other improvements of a like character.

A parol promise to convey a tract of land, made by a father to the son, may be enforced in equity, where the son has taken possession of the land under the contract and expended money in making lasting and valuable improvements. Such a promise rests on a valuable consideration. *Bright* v. *Bright,* 41 Ill. 97 ; *Kurtz* v. *Hibner,* 55 id. 514.

Here, James Bohanan not only entered into possession of the land under a contract with his father that he should have the land, and made improvements thereon, but in addition to this he gave up an offer of $1000 from his wife's father, in order to accept and avail of the offer his father had made him. The relinquishment of this $1000 may be regarded as a sufficient consideration for the conveyance which defendant agreed to make, and when possession was taken under the contract, no reason is perceived why a court of equity would refuse its aid to compel a deed.

The decree of the circuit court will be reversed, and the cause remanded, with directions to render a decree for a deed, as prayed for in the bill.

*Decree reversed.*