**MEDICAL CARE DEVELOPMENT,**

v.

**The BRYLER CORPORATION,**

and

**Pierre Leger.**

Supreme Judicial Court of Maine.

Argued Nov. 17, 1993.

Decided Dec. 15, 1993.

---

Linda A. Monica (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiff.

Peter D. Lowe (orally), Brann & Isaaconson, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

The defendants, The Bryler Corporation and its president, Pierre Leger, appeal from a judgment entered in the Superior Court (Kennebec County, *Chandler, J.*) following a jury verdict for the plaintiff, Medical Care Development (MCD), on its claims of breach of contract and tortious interference with contractual relations.[1] The defendants contend that the trial court erred in redacting a portion of a written contract admitted into evidence and in failing to instruct the jury properly on MCD's claim that the defendants tortiously interfered with the contractual relations of MCD and Pragma Corporation. We affirm the judgment.

The record reflects that pursuant to contracts with agencies of the United States government the parties in this proceeding were engaged in the business of providing technical assistance to foreign nations in the development of health facilities and other "infrastructure" projects. At issue in this case is the development of a water supply project in the northwest African nation of Benin. MCD is a nonprofit Maine corporation based in Augusta. Leger is a former employee of MCD who obtained his job with MCD when it opened a Washington office in 1977 for the purpose of seeking U.S. government contracts for foreign projects.

During the eleven years that Leger worked for it, MCD, pursuant to subcontracts with the Pragma Corporation, participated in several foreign projects funded by the U.S. government. Unlike MCD, Pragma, a minority-owned corporation, is able to contract directly with the U.S. government for projects funded with monies "set aside" for minority-owned firms. The arrangement between MCD and Pragma provided that Pragma would receive the prime contract and then subcontract a major portion of the work to MCD. In July 1987, the U.S. Agency for International Development (USAID) contracted with Pragma to develop the Benin Rural Water Supply Project. Pragma then subcontracted with MCD. In his position at MCD, Leger was actively involved as a technical consultant as this project went forward.

In July 1988, Leger and two partners incorporated The Bryler Corporation in the District of Columbia. In December of that year, Leger submitted his resignation to MCD. In February 1989, by written contract with MCD, Bryler agreed to provide Leger's personal services to MCD in connection with the Benin project through the end of 1989. The contract provided that Bryler would not seek or accept contracts or work orders relating to MCD's current projects in six foreign countries, including Benin. A

---

1. Appellate counsel did not represent the defendants at the trial of this case.

liquidated damages clause purported to govern any breach of this aspect of the contract.[2]

As the end of 1989 approached, it became known to the various parties involved that USAID planned to extend the Benin project into 1990. In December 1989, in his capacity as president of Bryler, Leger wrote two letters to Pragma: one stating that as of the end of 1989 Leger's technical services on the Benin project would be available through Bryler and not MCD, and the second providing budget information relating to Leger's proposal to do business with Pragma through his own corporation rather than MCD. Over the objection of MCD, Pragma entered into a direct contract with Bryler for Leger's services for the Benin project.

MCD filed the present action against Bryler and Leger, alleging their breach of the MCD–Bryler contract as well as their tortious interference with the contractual relationship between MCD and Pragma. The court granted MCD's motion to amend its complaint to add a claim for punitive damages. Bryler counterclaimed alleging MCD's breach of the MCD–Bryler contract and MCD's tortious interference with Bryler's contractual relations with "USAID and others." The parties later stipulated to the dismissal of this count of Bryler's counterclaim. After a hearing on MCD's motion *in limine*, the court ruled that the liquidated damages clause of the MCD–Bryler contract was unenforceable as to MCD's breach of contract claim and unrelated to its tortious interference with contractual relations claim and that the copy of the MCD–Bryler contract introduced in evidence would be redacted to delete the liquidated damages clause.

Following trial, the jury returned a special verdict finding no punitive damages but awarding MCD $21,581 on its breach of contract claim and $50,000 on its claim of tortious interference with contractual relations.[3] From the judgment entered on the jury verdict for MCD the defendants appeal.

### I.

The defendants first contend that the trial court committed reversible error by admitting in evidence the redacted copy of the MCD–Bryler contract. The defendants do not challenge the unenforceability of the liquidated damages clause, but argue that this evidentiary ruling deprived them of evidence corroborating Leger's testimony that the liquidated damages clause of the contract gave Leger an incentive not to breach the agreement with MCD.

The trial court grounded its ruling on M.R.Evid. 403, permitting exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." We review a trial court's decision to exclude evidence pursuant to Rule 403 for an abuse of the court's discretion. *Pierce v. Central Maine Power Co.*, 622 A.2d 80, 82 (Me.1993). Here the court not only permitted Leger to testify as to the existence of the liquidated damages clause and its resulting disincentive for him to breach the contract with MCD, but immediately instructed the jury that it could accept Leger's contention to that effect even though the jury could not directly consider the liquidated damages clause itself.[4] It is clear that

---

**2.** This paragraph of the contract read:

> BRYLER will not seek nor accept contracts or work orders related to MCD's current contracts in Burkina Faso, Benin, Togo, Belize, Cape Verde, Saudi Arabia, or the International EHC Conference. If BRYLER violates this provision, it agrees to compensate MCD in a lump sum equal to 10% of the total value of any contract received by BRYLER that is in violation.

The words "This clause will survive this agreement for three years until December 31, 1991" appear immediately thereafter, but are crossed out and initialed by Leger and MCD President John LaCasse.

**3.** The jury's verdict for Bryler on its counterclaim in the amount of $7,428.92 is not challenged by this appeal.

**4.** The defendants also argue that in redacting a key part of the contract from evidence, the trial court was violating the legal principle that the intent of the parties must be determined by viewing the contract as a whole. *See Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me.1973). This argument is without merit. When, as here, the language of the contract is not ambiguous, interpretation of the contract is a question of law for the court rather than a question of fact for the jury. *F.O. Bailey Co. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me.1992). Thus, redacting a por-

the amount of the damages, if any, that MCD could recover on its claims would not be governed by the liquidated damages clause. The court acted within its discretion in determining that the liquidated damage clause if not redacted from the contract admitted in evidence could be confusing to the jury in its consideration of the level of damages, if any, to award MCD.

## II.

■ While conceding their failure to object, the defendants contend that because the court's instructions to the jury did not properly set forth the elements of a tortious interference with a contract, the judgment must be vacated. They argue that the jury was not instructed in accordance with our previous decision that "if a person by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference, that person can be liable in damages for such tortious interference." *Pombriant v. Blue Cross/Blue Shield of Maine,* 562 A.2d 656, 659 (Me.1989).

At oral argument the defendants further conceded that the instructions given by the court on MCD's claim of tortious interference of its contract with Pragma were an amalgam of the proposed instructions submitted to the court by the parties. It is uncontradicted that none of the instructions submitted by the parties included the now requested language.

Notwithstanding the "obvious error" exception provided by M.R.Civ.P. 61, we have previously held when, as here, a litigant in a civil action "not only fails to interpose any objection but acquiesces affirmatively in the action taken, he cannot later be heard to complain." *Lowery v. Owen M. Taylor & Sons, Inc.,* 374 A.2d 325, 327 (Me.1977); *see also* M.R.Civ.P. 51(b) (party may not assign as error giving or failure to give instruction unobjected to prior to jury retirement for deliberation). It is clear on this record that the defendants agreed to the instructions given by the court. Accordingly, we hold

tion of the contract from the copy viewed by the jury does not implicate any principles of contract

that this issue has not been preserved for appellate review.

The entry is:

Judgment affirmed.

All concurring.