2004 ME 134

Joan SULLIVAN et al.

v.

Merval PORTER Jr. et al.

Supreme Judicial Court of Maine.

Argued: May 13, 2004.
Decided: Nov. 2, 2004.

---

Bernard J. Kubetz, Esq. (orally), Laura Lee Klein, Esq., Eaton Peabody, Bangor, for plaintiffs.

Catherine L. Haynes, Esq. (orally), Ellsworth, William Reiff Jr., Esq., Mt. Desert, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Merval and Susan Porter appeal from a judgment in the Superior Court (Hancock County, *Hjelm, J.*) entered in favor of Joan Sullivan and David Andrews in which the jury found that the parties had entered into an oral contract for the sale of the Porters' farm and the trial court ordered the Porters to transfer the property to Sullivan and Andrews. The Porters argue that (1) the evidence was insufficient for a jury to find that the parties entered into an oral contract for the sale of real estate; (2) the evidence of "part performance" and "reasonable reliance" was insufficient to remove the oral contract for the sale of real estate from the statute of frauds; (3) the court committed error in its jury instructions; (4) the court committed error in its production of the jury verdict form; and (5) the court erred in entering an order of specific performance. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Accepting the facts in the light most favorable to Sullivan and Andrews, as we must, *see, e.g., Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993), the jury and the court could have relied on the following facts. In December 1999, Sullivan began managing a horse stable located on property owned by Merval and Susan Porter in Bar Harbor. In July 2000, Merval informed Sullivan that he planned to move, and asked if she would like to rent the property to run a horse trail riding and lesson business. The property included a farmhouse, large barn, and over fifty-two acres of land.

[¶ 3] Sullivan and Andrews expressed an interest in the proposal, but after touring the property decided to rent only the barn and fields because the farmhouse required too much rehabilitation. Sullivan and Andrews never had a chance to explain their decision to Merval because, when the parties met in August 2000, Merval offered to sell the property to them for $350,000. At the same time, he also offered to owner-finance the sale at an interest rate between five and seven percent for a period between twenty and thirty years, and

asked for a $20,000 down payment. Sullivan and Andrews orally accepted his offer. Merval told Sullivan and Andrews that he would contact his attorney to start the paperwork. Sullivan and Andrews informed Merval that they would refinance their house to obtain the down payment for the property.

[¶ 4] When the Porters moved out of the farmhouse in September 2000, they gave the keys to Sullivan and Andrews. Sullivan and Andrews took possession of the property and began improving the stable and trails. The parties continued on this course without incident until November 24, 2000, when Merval arrived at the farm with a real estate agent. When questioned by Sullivan, Merval informed her that there was interest from another buyer, but told Sullivan that he would honor their agreement. The parties agreed to meet the following day for presentation of half of the down payment.

[¶ 5] When the parties met the next day, Merval again reaffirmed his intention to honor the agreement. Sullivan offered him $10,000 in cash toward the down payment, but Merval stated that he did not feel right accepting the money until the paperwork was prepared. Nonetheless, he and his wife eventually accepted $3000 toward the down payment.[1]

[¶ 6] After the November 25, 2000 meeting, Sullivan and Andrews began extensive renovations of the farmhouse, which included removing four tons of horsehair plaster from the walls and replacing it with insulation and sheetrock, rewiring the electricity, installing new plumbing, erecting new fencing, and removing trash. They also started their new business, joined the chamber of commerce, repaired horse trails, began giving riding lessons and rehabilitating horses, placed advertisements in the local newspaper, and paid for an appraisal of the property. During the renovation process, Merval visited the property regularly and received updates about the renovations. When asked about the necessary paperwork, Merval always responded that he was too busy to contact his attorney.

[¶ 7] In June 2001, Sullivan forwarded a copy of an appraisal of the Porters' property, valuing the property at $250,000, and a letter stating that Sullivan and Andrews planned to "stick to the $350,000 price [they] agreed on."[2] Merval responded to this correspondence by offering to sell the property to Sullivan and Andrews for $450,000 with a $50,000 down payment. After the parties were unable to resolve the issues privately, Sullivan and Andrews filed a complaint alleging, among other things, the existence of a contract and promissory estoppel, and requesting specific performance. The Porters asserted the statute of frauds as an affirmative defense.

■ [¶ 8] The parties agreed to allow the jury to decide whether a contract existed and to have the jury sit in an advisory capacity relating to the statute of frauds, promissory estoppel, and specific performance. After the close of evidence, the trial court provided instructions to the jury including an ordinary contract instruction articulating the burden of proof for the existence of a contract and the part performance of that contract as a preponderance of the evidence.[3] The court there-

---

1. At the meeting, Sullivan also presented Merval with a written agreement, with slightly different terms than the original agreement, but the parties did not act upon the proposal.

2. The correspondence also included a "proposed" purchase and sale agreement to the Porters, with terms that differed from the original agreement.

3. To remove a contract from the statute of

after instructed that the alternative claim for promissory estoppel required proof by clear and convincing evidence. Both parties agreed to the court's prepared jury instructions before they were delivered to the jury.

[¶ 9] The jury found that the parties entered into a contract for the sale of the farm. Acting in an advisory capacity, the jury found in favor of Andrews and Sullivan on the issues of the part performance doctrine, promissory estoppel, and specific performance. Although not bound by the jury's decision, the court concluded that the jury's assessment of the equitable issues was warranted. The court also found that the evidence at trial established that the parties agreed to a $350,000 purchase price and that the Porters agreed to finance the sale at an interest rate between five and seven percent for a term of between twenty and thirty years. The court ordered the Porters to execute a purchase and sale agreement for $350,000 to be financed by the Porters unless otherwise agreed, and required them to provide notice of the terms of repayment and interest rate in the range found by the court within ten days of the judgment.

## II. DISCUSSION

### A. Statute of Frauds

[¶ 10] We begin with the axiom that, absent extraordinary circumstances, a contract for the sale of land must be in writing to be enforceable. 33 M.R.S.A. § 51(4) (1999) (statute of frauds).[4] A transfer of real property without a written instrument may be enforced only if the party seeking to enforce the contract proves by clear and convincing evidence that an oral contract exists and that an exception to the statute of frauds applies. *See Landry v. Landry*, 641 A.2d 182, 183 (Me.1994); *Goodwin v. Smith*, 89 Me. 506, 508, 36 A. 997, 998 (1897). One exception to the statute of frauds is found in the part performance doctrine. *Landry*, 641 A.2d at 183.

[¶ 11] The part performance doctrine requires the party seeking to enforce the contract to establish both that she acted in partial performance of her contractual duties and that the other party made misrepresentations that induced that partial performance. *Cottle Enters., Inc. v. Town of Farmington*, 1997 ME 78, ¶ 17 n. 6, 693 A.2d 330, 335–36; *Woodbury v. Gardner*, 77 Me. 68, 70 (1885). Thus, to remove the contract from the operation of the statute of frauds pursuant to this doctrine, the party seeking to enforce the contract must establish by clear and convincing evidence[5] (1) that the parties did enter into a contract; (2) that the party seeking to enforce the contract partially performed the contract; and (3) that the performance was induced by the other party's misrepresentations, which may include acquiescence or silence. *Cottle Enters.*,

frauds pursuant to the part performance doctrine, the law requires proof of the existence of the contract and part performance of the contract by clear and convincing evidence. *Goodwin v. Smith*, 89 Me. 506, 508, 36 A. 997, 998 (1897).

4. Maine's statute of frauds provides, in relevant part, that

[n]o action shall be maintained ... [u]pon any contract for the sale of lands ... unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise.

33 M.R.S.A. § 51(4) (1999).

5. We discuss the jury instructions in the present case, which provided a lower standard of proof, in part B below.

*Inc.*, 1997 ME 78, ¶ 17 n. 6, 693 A.2d at 335–36; *Goodwin*, 89 Me. at 508, 36 A. at 998; *Woodbury*, 77 Me. at 70.

### 1. Existence of a Contract

■ [¶ 12] Because any action to enforce a contract depends on the existence of the contract itself, we begin by addressing the Porters' argument that there was insufficient evidence for the jury to find the existence of a contract for the sale of their farm to Sullivan and Andrews. We apply a deferential standard of review to a jury's findings of fact, and we will sustain a jury's verdict if, when viewed in the light most favorable to the plaintiff, there is any credible evidence in the record to support the verdict. *Marquis*, 628 A.2d at 648.

■ [¶ 13] Generally, " '[t]he existence of a contract is a question of fact to be determined by the jury.' " *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me.1996) (quoting *Bates v. Anderson*, 614 A.2d 551, 552 (Me.1992)). A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044.

[¶ 14] A review of the record supports the jury's findings that there was a meeting of the minds between the Porters and Sullivan and Andrews. The parties' agreement in August 2000 [6] embodied the essential material terms for a contract to sell the farm, including the identification of the property, the parties to the sale, the purchase price, the amount of the down payment, and the type of financing. *Cf. A.B.C. Auto Parts, Inc. v. Moran*, 359 Mass. 327, 268 N.E.2d 844, 847 (1971) (stating that the essential terms for a written contract for the sale of real estate include the "nature of the transaction, the parties, the locus of the property, and the purchase price"). Specifically, the parties agreed to the essential elements of a contract by identifying: (1) the property to be sold as "Lakewood Farm"; (2) the parties to the transaction, the Porters as the sellers and Sullivan and Andrews as the buyers; (3) the purchase price of $350,000; (4) the $20,000 down payment; and (5) the arrangement for owner financing. The parties also established within a finite range the term of the mortgage (twenty to thirty years) and the interest rate (five to seven percent). Although the rate and duration of the loan were expressed within a range, this is not unusual in a purchase and sale agreement and did not create an unaddressed element. Moreover, the trial court allowed the sellers to choose each term within the range.

[¶ 15] This evidence was sufficient for the jury to determine the existence of a contract and to fix the legal liabilities of the parties. *See Forrest Assocs.*, 2000 ME 195, ¶ 9, 760 A.2d at 1044.

### 2. Part Performance

■ [¶ 16] In addition to arguing that there was insufficient evidence to support the existence of the contract, the Porters also argue that Sullivan and Andrews failed to prove part performance.

---

**6.** On two separate occasions, Sullivan presented the Porters with a written agreement with slightly different terms than the original agreement. Because the parties did not agree to change the terms of the original agreement, Sullivan's efforts could have been understood by the jury to be nothing more than unsuccessful attempts to renegotiate the terms of a preexisting contract that did not vitiate the August 2000 contract.

■ [¶ 17] The part performance doctrine is grounded in the principle of equitable estoppel. *Woodbury,* 77 Me. at 70. Equitable estoppel, also referred to as estoppel in pais, "involves misrepresentations, including misleading statements, conduct, or silence, that induce detrimental reliance." [7] *Cottle Enters.,* 1997 ME 78, ¶ 17 n. 6, 693 A.2d at 335–36. "After having induced or knowingly permitted another to perform in part an agreement, on the faith of its full performance by both parties and for which he could not well be compensated except by specific performance, the other shall not insist that the agreement is void." *Woodbury,* 77 Me. at 70; *see also Landry,* 641 A.2d at 183; *Northeast Inv. Co. v. Leisure Living Communities, Inc.,* 351 A.2d 845, 855 (Me. 1976). Accordingly, the party asserting partial performance must demonstrate not only meaningful partial performance, but also the other party's inducement of that performance through misrepresentation.

### a. Proof of Performance

[¶ 18] Sullivan and Andrews took possession of the farm in September 2000 with the understanding that Merval would begin the necessary paperwork to effectuate the sale of the farm. Sullivan and Andrews made extensive repairs to the farmhouse, stables, and grounds. They also offered $10,000 toward the down payment, $3000 of which the Porters actually accepted, and devoted time and money to their new business on the property. This evidence supports a conclusion that Sullivan and Andrews partially performed their contractual obligations.

### b. Proof of Inducement by Misrepresentation

[¶ 19] The evidence also supports the finding that the Porters induced Sullivan and Andrews's partial performance by misrepresentation. The Porters relinquished possession of the farm to Sullivan and Andrews. They remained silent upon learning that Sullivan and Andrews planned to refinance their home to obtain the funds for the agreed upon down payment. After accepting $3000 as a partial down payment for the farm, the Porters remained silent while they observed Sullivan and Andrews beginning extensive renovations and building their business on the property. Merval also repeatedly represented that he was having his lawyer draw up the paperwork for the sale of the farm. Taken collectively, the Porters' actions and silent acquiescence resulted in a misrepresentation that induced Sullivan and Andrews to partially perform their contractual obligations in faith that the Porters were going to perform the contract.

[¶ 20] In sum, the evidence supports the findings that (1) the Porters entered into a contract with Sullivan and Andrews to sell the farm; (2) Sullivan and Andrews partially performed their duties under the contract; and (3) the Porters made misrepresentations through their actions and omissions that induced Sullivan and Andrews's partial performance. We therefore affirm the court's finding, consistent with the jury's advisory finding on the issue, that the parties' oral contract for the sale of land was removed from the statute of frauds based on the part performance doctrine.

---

7. Equitable estoppel differs from promissory estoppel. The doctrine of promissory estoppel requires " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person.' " *Cottle Enters., Inc. v. Town of Farmington,* 1997 ME 78, ¶ 17 n. 6, 693 A.2d 330, 335 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981)).

### B. Jury Instructions

■ [¶ 21] Although the Porters assented to the court's jury instructions at trial, they contend on appeal that the trial court erred in instructing the jury that Sullivan and Andrews had the burden of proving the existence of the oral contract and part performance of that contract by a preponderance of the evidence.

■ [¶ 22] Rule 51(b) of the Maine Rules of Civil Procedure provides that claims of error in jury instructions may not be raised on appeal unless the complaining party objected to the instructions before the jury retired. Nonetheless, despite an appealing party's failure to object, we review appeals from jury instructions for obvious error. *Reno v. Townsend,* 1997 ME 198, ¶ 5 n. 3, 704 A.2d 309, 311. We do not apply the obvious error standard, however, "when … a litigant in a civil action 'not only fails to interpose any objection but acquiesces affirmatively in the action taken.'" *Med. Care Dev. v. Bryler Corp.,* 634 A.2d 1296, 1299 (Me. 1993) (quoting *Lowery v. Owen M. Taylor & Sons, Inc.,* 374 A.2d 325, 327 (Me.1977)). In such circumstances, we have declined to review the claimed error. *Id.* Because the Porters explicitly acquiesced to the court's jury instructions on the record, we will not consider their unpreserved claim of error in this appeal.[8]

### C. Special Verdict Form

■ [¶ 23] In its instructions to the jury, the trial court explained that, if the jury found the existence of a contract, it should also determine the terms of the contract. The special verdict form did not, however, provide a space for the jury to articulate the terms of the contract. After reviewing the special verdict form at trial, the Porters did not object to the form's omission. On appeal, however, the Porters argue that the court erred by instructing the jury to find the terms of the contract without providing an opportunity to express those terms on the special verdict form.

■ [¶ 24] The Porters failed to object to the special verdict form at trial. Accordingly, we review the trial court's omission for obvious error. *Morey v. Stratton,* 2000 ME 147, ¶ 10, 756 A.2d 496, 499. Because the court, ultimately, had the authority to exercise its equitable power with respect to the remedy of specific performance, *see Great Hill Fill & Gravel, Inc. v. Shapleigh,* 1997 ME 75, ¶ 7, 692 A.2d 928, 930, the fact that the court, rather than the jury, articulated the terms of the contract did not substantially affect the Porters' substantial rights.

### D. Remedy

■ [¶ 25] It is within the trial court's equitable powers to apply the remedy of specific performance when a legal remedy is either inadequate or impractical. *Ludington v. LaFreniere,* 1998 ME 17, ¶ 7, 704 A.2d 875, 878. An order of specific performance may be appropriate to enforce a contract for the sale of land because of the uniqueness of each parcel of real property. *See O'Halloran v. Oechslie,* 402 A.2d 67, 70 (Me.1979) (stating that "a justice may assume the inadequacy of money damages in a contract for the purchase of real estate and order the specific performance of the contract without an actual showing of the singular character of the realty"). The terms of a contract must

---

8. We note that the jury found in favor of Sullivan and Andrews on all issues, including those for which they were specifically instructed as to the clear and convincing evidence standard, evidencing a determination on the part of the jury that an enforceable contract clearly existed.

be reasonably certain in order to be enforceable by specific performance. *See Ault v. Pakulski,* 520 A.2d 703, 704–05 (Me.1987); *Masselli v. Fenton,* 157 Me. 330, 336, 172 A.2d 728, 731 (1961). We review a trial court's order of specific performance for an unsustainable exercise of discretion. *See Hardigan v. Kimball,* 553 A.2d 1265, 1267 (Me.1989).

[¶ 26] The trial court did not exceed the bounds of its discretion by finding that the nature of the property, Sullivan and Andrews's substantial investment of time and money to renovate the farmhouse and grounds, and the resources they devoted to establishing a new business, made Lakewood Farm so unique that there was no adequate remedy other than an order of specific performance. Finally, the trial court did not exceed the bounds of its discretion by finding that the terms of the contract were sufficiently certain to allow the court to order specific performance in the form of a purchase and sale agreement.[9]

The entry is:

Judgment affirmed.

---

9. Because we affirm the finding of an express contract that is removed from the statute of frauds by the part performance doctrine, we need not address whether the promissory estoppel doctrine applies to an oral contract for the sale of real estate.