STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 FEB 23 P 12: 44

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-191

TED- CUM - 2/23/20

JESSE L. BROWN and
APRIL R.M. BROWN,

Plaintiffs,

v.

ANTONIO K. JACKSON and
MARJORIE J. JACKSON,

Defendants.

**FINDINGS, DECISION
AND
JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

MAY 16 2007

## I. BEFORE THE COURT

This case was tried to the court without a jury on the Browns' complaint regarding the defendants' purchase and sale of plaintiffs' home in the Town of Casco. They allege breach of contract (Count II); failure of consideration (Count III); fraud in the inducement (Count IV); constructive trust (Count V); and unjust enrichment (Count IV). They seek a variety of remedies; declaratory judgment (Count I); rescission (Count III); and, general damages including attorney's fees and costs.

## II. BACKGROUND [1]

The Browns were owners of a residence at 42 New Road in the Town of Casco. They built the house on land given to them by April Brown's father who assisted them with the construction of their home.

The parties became acquainted after meeting at the church they all attended. In order to assist the Jacksons who were experiencing financial difficulties, the Browns invited them and their children to move in and share their home. Notwithstanding the

---

[1] The recitation of facts herein constitute factual findings by the court unless otherwise stated.

large number of people living under one roof (4 adults, 12 children) they shared expenses and household duties and responsibilities and the arrangement seems to have worked fairly well.

After approximately five months, the Jacksons moved out of the house to the Skowhegan area. The Browns began to experience some financial problems and offered to sell their home to the Jacksons. The Jacksons moved back after the parties reached a purported agreement. The dispute here centers around the terms of the purchase and sale agreement. Even though a written agreement was drafted by the Jacksons, it was initialed, but not signed by them.

The plaintiffs claim that the Jacksons were to take over payments of the mortgage for a year, by the end of the year the Jacksons were to obtain a mortgage, pay off the Brown's mortgage (with an approximate balance of $80,000) and pay the Browns the difference between the mortgage balance and the purchase price of $160,000, expected to be about $79,300.[2] The Browns claim the fair market value of their home at the time was about $180,000 or more, but they agreed to the sale price of $160,000 as a compromise and to reach a final agreement.

Although the initial oral agreement was for a future sale of the property, it was put into writing and both defendants initialed an important part of it. Antonio Jackson persuaded the Browns to execute a quitclaim deed. He told them this is what is done on trust and between friends. If the Jacksons were not able to obtain a mortgage, they would be obligated to transfer the property back to the Browns by a new quitclaim deed. The deed is consistent with the agreement in all essential parts. There is no promissory note or mortgage deed.

---

[2] $79,300 was the anticipated balance after paying off the mortgage and a credit of $700 for a down payment.

The agreement (Plaintiffs' Ex. 3) that is the subject of this dispute was signed by the Browns on October 17, 2003. The "Agreement to Sell Real Estate" is on a pre-printed form and with one exception was filled out by the Jacksons. The agreement identifies the property by address at 42 New Road and its location on the assessor's map. It states the purchase price of "one hundred sixty thousand dollars" to be paid with a deposit of $700, that it was subject to the Browns' mortgage with National City Mortgage (Plaintiffs' Ex. 2) of $80,000 ("or balance due at closing") and a balance of $79,300.

Paragraph 19 of the agreement was written in by Jesse Brown:

> 19.  CLOSING DATE:  This contract shall be closed and balance remaining delivered to seller on 10th month of 2004, unless extended by other provisions of this contract.

Although the Jacksons did not sign the document, each of them initialed paragraph 19.

The quitclaim deed (Plaintiffs' Ex. 4) is dated "15 October, 2003" but was signed by the Browns on the same day as they signed the agreement. The deed, prepared by Mr. Jackson, also stated the purchase price as "one hundred sixty thousand dollars ($160,000)."

When Mrs. Jackson attempted to record the deed at the Cumberland County registry, she was unable to do so because she did not have the required State of Maine Real Estate Transfer Tax Declaration. On October 31, 2003 she obtained Jesse Brown's signature on the necessary tax form. The form was signed by Antonio Jackson on November 3, 2003 and was recorded on that date. Marjorie Jackson prepared the transfer tax declaration which clearly states the full value to be $160,000 and the taxable consideration as $160,000.

After the transfer in mid-October, the Browns continued to live at the residence with the Jacksons before they moved to another location. The Jacksons made payments on the Browns' mortgage and as originally agreed obtained their own mortgage (Plaintiffs' Ex. 6) for $140,000 in October 2004. The Browns' mortgage was paid and discharged (Plaintiffs' Ex. 8) but the Jacksons retained the balance and made no payments to the Browns.

In the spring and summer of 2004 the Browns became uneasy about the Jacksons and worried they would not get their money. They enlisted the help of their pastor who contacted Antonio Jackson. Mr. Jackson did not raise any issue about owing the balance; he replied that the money was not yet due, that it is "not a problem" and "when it comes due he will get his money." Reverend Ryerson contacted Mr. Jackson about a month later. When he asked Jackson "What's up?" Jackson replied "none of your business." It was a short conversation with no further promises of payment.

In October 2005 the Jacksons refinanced the property with a new mortgage (Plaintiffs' Ex. 7), but again, they made no payment to plaintiffs. The Jacksons claim that any surplus funds from their mortgages was used for capital improvements of the property and that the present fair market value is approximately $250,000 and that it is "the nicest house in the neighborhood."

The defendants assert that they never signed an agreement, that there were several drafts and they never saw the agreement admitted as Exhibit 3, notwithstanding their initials on paragraph 19. They also maintain that they did not insert the purchase price of $160,000 in the deed; this was done by Jesse Brown before Mrs. Jackson attempted to file the deed, with the stated purchase price, at the registry. Their claim that the purchase price was to be only $80,000, the amount of Browns' mortgage balance, is not credible.

4

The Browns proceeded with the transaction in this manner as a way to avoid foreclosure, to relieve them of the on-going expenses of the home and avoid the expense of engaging an attorney to assist in the transfer. They very naively relied upon Mr. Jackson's misrepresentations as to the necessity for the quitclaim deed because he said he had experience in these matters and that he had done something similar for his mother in Florida.

The court's review of the testimony and exhibits clearly shows by clear and convincing evidence that the agreed purchase price was $160,000, that the Jacksons would assume the monthly payments of the Browns' mortgage for about a year, obtain their own financing, pay off the mortgage and pay the balance ($160,000 less mortgage pay-off) in October 2004.

## III. DISCUSSION

A transfer of real estate must be evidenced in writing. The statute of frauds provides:

> No action shall be maintained in any of the following cases:
>
> * * *
>
> **4. Contract for the sale of land.** Upon any contract for the sale of lands, tenements, or heriditatments, or of any interest in or concerning them;
> * * *
>
> unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof is in writing and signed by the party to be changed therewith, or by some person thereunto lawfully authorized, *but the consideration thereof need not be expressed therein, and may be proved otherwise.* (emphasis added)

33 M.R.S.A. § 51(4).

The problem here is obviously the insufficiency of the self-drafted documents; however, when taken as a whole, they are sufficient to constitute a written contract.

5

They describe the property, define the terms and conditions of the sale and set the amount of the purchase price.

Notwithstanding the statute of frauds, an oral contract regarding the sale of real estate can be enforced if the party seeking to enforce the contract proves by clear and convincing evidence that an oral contract exists and that an exception to the statute of frauds exists. *Sullivan v. Porter*, 2004 ME 134, ¶ 10, 861 A.2d 625, 630.

This court has determined that there was a written contract, but the evidence is also sufficient for the court to find there was an enforceable oral contract under the standard set out by the Law Court in *Sullivan*.

In this case, we have more than an oral contract, there are writings; an agreement and the quitclaim deed, both of which are dated October 17, 2003 and the tax declaration form as other evidence of intent the parties, a meeting of the minds and the established purchase price.

Additionally, we have substantial evidence of part performance. As in *Sullivan v. Porter*, the purchasers (Jacksons) partially performed the contract by taking possession, making substantial repairs and improvements, making a down payment, obtaining a mortgage and paid off Browns' mortgage. The only performance not completed was the final payment by the Jacksons to the Browns. This part performance is sufficient to remove the contract from the statute of frauds. The contract, whether it is oral or written, is valid and enforceable.

### III. DECISION AND JUDGMENT

The clerk will make the following entries as the Decision and Judgment of the court:

    A.    Judgment for plaintiffs Jesse L. Brown and April R.M. Brown on the claim for breach of contract (Count II) and fraud in the inducement (Count IV).

6

B.     On the claim for breach of contract the court assesses damages in the amount of $79,300 plus interest[3] and costs as allowed by statute and rule.

C.     No attorney's fees are awarded.

D.     Judgment for defendants Antonio K. Jackson and Marjorie J. Jackson on plaintiffs' claims for fraud in the inducement, recision and unjust enrichment.

E.     Upon entry of judgment the plaintiffs are entitled to obtain a post-judgment attachment and trustee process in an amount not to exceed $79,300 plus a sum calculated for pre-judgment interest, costs as approved by the court and post-judgment up to a total not to exceed $90,000.

SO ORDERED.

DATED:     February 22, 2007

_____
Thomas E. Delahanty II
Justice, Superior Court

---

[3] Pre-judgment interest is to be calculated at 5.77% and post-judgment interest at 10.99%.

STEPHEN CHUTE ESQ
PO BOX 707
CASCO ME 04077        — P/

F COURTS
and County
3ox 287
ne 04112-0287

ERIKA FRANK ESQ
711 ROOSEVELT TRAIL      · DM
WINDHAM ME 04062