STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-16-19      ✓

SANDRA L. NAPOLITANO,          )
Individually and on behalf of   )
WINDHAM Q, LLC,                 )
                                )
        Plaintiff,              )
                                )
v.                              )      ORDER ON PLAINTIFF'S MOTION FOR
                                )      PRELIMINARY INJUNCTIVE RELIEF
ARTHUR NAPOLITANO, SR. and      )
STEPHEN NAPOLITANO,             )
                                )
        Defendants.             )

Plaintiff Sandra L. Napolitano, individually and on behalf of Windham Q,

LLC ("Windham Q"), has filed a motion pursuant to Maine Rule of Civil Procedure

65 for an order granting preliminary injunctive relief against Defendants Arthur

and Stephen Napolitano. Based on the following, Plaintiff's motion for

preliminary injunctive relief is denied.

## BACKGROUND

Plaintiff and Defendant Arthur Napolitano are husband and wife. (Sandra

Napolitano Aff. ¶ 2.) According to Plaintiff's affidavit, Plaintiff and Arthur

Napolitano are each 50% members and the sole managers of Windham Q, LLC,

which operates a Dairy Queen franchise located in Windham, Maine. (*Id.*)

Defendant Stephen Napolitano is Arthur Napolitano's son and the general

manager of the Dairy Queen store. (*Id.* ¶ 4.)

According to Plaintiff's affidavit, in the spring of 2013, she became concerned that Stephen Napolitano was using Windham Q's funds to pay his personal expenses. (*Id.* ¶¶ 3-4.) Plaintiff requested that Arthur investigate the matter. (*Id.* ¶ 5.) Arthur Napolitano assured her that Windham Q had not paid any non-business expenses. (*Id.*) Plaintiff became concerned about Windham Q's expenses again in May 2014 and requested that a forensic audit of Windham Q be conducted. (*Id.* ¶¶ 6, 8.) Arthur opposed the audit. (*Id.* ¶ 9.)

Stephen Napolitano asserts that Windham Q's payment of certain personal expenses was approved as part of his benefits package as the general manager of the Dairy Queen. (Stephen Napolitano Aff. ¶ 4.) Stephen asserts that, in response to Plaintiff's complaints about the expenses, Arthur Napolitano increased his compensation and curtailed the practice of using Windham Q's credit card to pay certain expenses. (*Id.* ¶ 9.) Plaintiff asserts that Arthur did not discuss Windham Q's payment of Stephen's personal expenses with her and she did not approve the practice. (Sandra Napolitano Aff. ¶¶ 12, 19.)

According to Plaintiff, Stephen Napolitano wrote a letter to her attorney in October 2014 admitting that certain personal expenses were paid for using Windham Q's funds and stating that he was reimbursing Windham Q for those expenses. (*Id.* ¶ 14.) Plaintiff does not believe that Stephen fully reimbursed Windham Q for all of the personal expenses paid by the company. (*Id.* ¶ 15.)

2

Plaintiff requested Arthur Napolitano remove Stephen as the general manager of the Dairy Queen, but Arthur refused to do so. (*Id.* ¶ 16.)

Plaintiff filed a civil complaint, individually and on behalf of Windham Q, with the Superior Court on August 26, 2015. Plaintiff's complaint asserts claims for breach of fiduciary duty, conversion, to recover money owed, unjust enrichment, and fraud against Arthur and claims for conversion, to recover money owed, unjust enrichment, fraud, breach of duty of loyalty, and breach of contract against Stephen. Plaintiff's complaint also seeks an order reconstituting the governance of Windham Q and removing Arthur and Stephen from any positions overseeing the operation of Windham Q.

Arthur Napolitano filed an answer to the civil complaint on September 18, 2015. Stephen Napolitano filed his answer on September 24, 2015. Stephen Napolitano amended his answer on February 11, 2016, and added a counterclaim against Plaintiff seeking a declaratory judgment that the parties had agreed that Stephen would receive an ownership interest in Windham Q in exchange for agreeing to work as the general manager of the Dairy Queen store. (Stephen Napolitano Am. Ans. & Countercl. ¶¶ 13-14.)

Arthur Napolitano also filed a complaint for divorce with the District Court on September 29, 2015. Plaintiff filed an answer and counterclaim for divorce on October 6, 2015. On January 13, 2016, the District Court appointed a

3

Referee to conduct an audit of Windham Q, to produce an audit report, and to monitor and report on the financial and operational performance during the pendency of the divorce action. (FM-16-02, Order of Appointment 1.)

Both the civil action and family action were accepted for transfer to the Business and Consumer Court in June 2016. Although not consolidated, the two cases are being coordinated before the Business and Consumer Court. The Referee filed his first report in the family action on August 5, 2016 (the "Referee's Report").

Plaintiff filed a motion for preliminary injunctive relief on August 9, 2016. Plaintiff seeks a preliminary injunction ordering the following: (1) that Stephen Napolitano be removed as general manager; (2) that the scope of the Referee's role be expanded to include (a) hiring a neutral third-party general manager to oversee the day-to-day operations of the Dairy Queen store, and (b) continued oversight of Windham Q's finances; (3) that a new accountant be hired by Windham Q at the recommendation of the Referee; (4) that the new accountant conduct a complete review of the prior six tax years to determine if the parties' tax returns and Stephen Napolitano's W-2s should be amended; (5) that Defendants pay the costs of the Referee; and (6) any other relief the court deems just. (Pl. Mot. Prelim. Inj. 18-19.)

Defendants filed an opposition to the motion for preliminary injunctive relief on August 31, 2016. Plaintiff replied on September 8, 2016. Plaintiff also filed an "addendum" to her reply on October 11, 2016. Oral argument on all pending motions in this case was held on October 12, 2016.

## STANDARD OF REVIEW

Ordinarily, to obtain a preliminary injunction, a plaintiff must produce prima facie evidence of the following: (1) the plaintiff will suffer "irreparable injury" if the injunction is not granted; (2) the irreparable injury to the plaintiff outweighs any harm to the defendant from granting the injunction; (3) the plaintiff is likely to succeed on the merits of his or her claims; and (4) the public interest will not be adversely affected by granting the injunction. *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129. Failure to demonstrate that any one of the criteria is met requires the motion for preliminary injunction be denied. *Id.* ¶ 10. In determining whether to issue a preliminary injunction, the court may rely on evidence presented in sworn depositions, affidavits, oral testimony, or a verified complaint. 3 Harvey, *Maine Civil Practice* § 65:4 at 333 (3d ed. 2011).

Because Plaintiff's motion seeks an injunction compelling Defendants to take affirmative actions, Plaintiff's motion is one for mandatory injunctive relief. *See* Horton & McGehee, *Maine Civil Remedies* § 5-2 at 100 (4th ed. 2004). The

5

purpose of a preliminary injunction is to preserve the status quo pending final judgment. *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 771 (Me. 1989). Because a mandatory injunction, by its very nature, will alter the status quo, courts do not readily enter mandatory preliminary injunctions. *Id.* However, the mere fact that a preliminary injunction sought by a plaintiff has mandatory aspects does not *ipso facto* render the motion invalid. *Id.* Rather, to obtain a mandatory preliminary injunction, the plaintiff must meet a higher burden. Horton & McGehee, *Maine Civil Remedies* § 5-2 n.14 at 100. In addition to the other criteria, the plaintiff must show "a *clear* likelihood of success on the merits." *Emerson*, 563 A.2d at 771 (emphasis supplied).

## ANALYSIS

As discussed above, Plaintiff seeks a mandatory preliminary injunction removing Stephen Napolitano as general manager, removing Windham Q's accountant, and expanding the role of the Referee. (Pl. Mot. Prelim. Inj. 18-19.) Plaintiff argues that if the mandatory preliminary injunction is not granted, Stephen Napolitano will continue to mismanage Windham Q, continue to use Plaintiff's and Arthur Napolitano's money to pay his personal expenses, and that Windham Q will continue to file "improper" tax returns. (*Id.* at 16.)

6

## A.    The Referee's Report

The court first addresses the threshold matter of the Referee's Report. Plaintiff largely relies on the Referee's Report filed in the related divorce action as evidentiary support for her motion. (*Id.* at 5-11.)  However, because the Referee's Report is not sworn evidence, it cannot be considered by the court in deciding the motion for preliminary injunction.[1]  As previously discussed, in determining whether to issue a preliminary injunction, the court may rely on evidence presented in sworn depositions, affidavits, oral testimony, or a verified complaint.  3 Harvey, *Maine Civil Practice* § 65:4 at 333.

The Referee's Report has not been sworn to and no affidavit has been filed by the Referee stating under oath that the contents of the Report, to the best of his personal knowledge, are true and accurate.  Therefore, because Plaintiff largely relies on the unsworn Referee's Report, Plaintiff has not provided sufficient, proper evidence in order to obtain preliminary injunctive relief.[2]

---

[1]  In their opposition, Defendants assert that the Referee's Report is not admissible evidence in this case because it was filed in the separate divorce action. (Defs. Opp'n to Pl. Mot. Prelim. Inj. 11-12.)  In her reply, Plaintiff asserts, at a trial management conference on June 7, 2015, the parties verbally agreed that the Referee's Report would apply to both proceedings. (Pl. Reply to Defs. Opp'n to Pl. Mot. Prelim. Inj. 2.) Because the court finds that the Referee's Report is not properly before the court on the motion for preliminary injunctive relief, the court need not decide that this juncture whether the Referee's Report is admissible in the civil action.

[2]  Additionally, attached to Plaintiff's reply and her "addendum" are a number of additional exhibits purported to show that Stephen Napolitano used Windham Q's credit card to pay for personal expenses. *See* (Pl. Reply to Defs. Opp'n to Pl. Mot. Prelim. Inj.

7

B.    The Merits of the Motion for Preliminary Injunction

Moreover, even if the court were to consider the Referee's Report, Plaintiff has still failed to produce prima facie evidence that she or Windham Q will suffer an "irreparable injury" if the preliminary injunction is not granted. An "irreparable injury" is an injury "for which there is no adequate remedy at law." *Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10, 837 A.2d 129 (internal quotation marks and citation omitted). Although there is no comprehensive rule for measuring the adequacy of a legal remedy, where a plaintiff is entitled to money damages and the plaintiff has not demonstrated that damages would be uncollectable from the defendant, the legal remedy will be deemed adequate. Horton & McGehee, *Maine Civil Remedies* § 5-3(a) at 101-02; *Levesque v. Pelletier*, 144 Me. 245, 249, 68 A.2d 9, 11 (1949).

In his Report, the Referee identified numerous credit card charges to the business from 2012 to 2014 "where the business purpose was not readily apparent." (Referee Report 13.) These included gas charges, drugstore charges, EZ Pass tolls, groceries, maintenance charges, office supplies, car

---

Exs. D-G, J; Pl. Addendum to Reply Exs. L-O.) Like the Referee's Report, no affidavit has been filed swearing to the authenticity of these documents. Therefore, like the Referee's Report those exhibits cannot be considered by the court. *See* 3 Harvey, *Maine Civil Practice* § 65:4 at 333. Also like the Referee's Report, even if the court were to consider these documents, there is no indication that Plaintiff would not be entitled to damages or that such damages would be uncollectable from Defendants. *See* Horton & McGehee, *Maine Civil Remedies* § 5-3(a) at 101-02; *Levesque*, 144 Me. at 249, 68 A.2d at 11.

8

maintenance, travel expenses, medical charges, Amazon and iTunes charges, meal charges, department store charges, and $167,775.00 of other questionable charges. (*Id.* at 13-14.) The Referee also noted numerous annual expenses where the business purpose was "not clearly determinable." (*Id.* at 11.) These expenses included automobile repairs, cable television, internet payments to multiple vendors, tolls, travel expenses, and yard work. (*Id.* at 8-11.) The Referee also noted a "high rate" of variance between the business's register tapes and daily deposits, which demonstrated a significant system failure, made validating the daily deposit amounts difficult, and revealed certain commingling of personal and company funds. (*Id.* at 15-18.)

Even if the Referee's findings constitute prima facie evidence of an injury to Plaintiff and Windham Q, Plaintiff has not demonstrated that she is without an adequate remedy at law. Plaintiff has not cited, and the court is not aware of, any legal authority that would prevent Plaintiff from recovering monetary damages for the above injuries. Plaintiff has also not put forth any evidence that monetary damages would be uncollectable from Defendants. Thus, Plaintiff has not demonstrated an injury for which there is no adequate remedy at law.

Moreover, additional findings in the Referee's Report actually demonstrate that Plaintiff is unlikely to suffer irreparable injury if the preliminary injunction is not granted. In his report, the Referee noted that a number of questionable

9

expenses had actually declined in 2015 and 2016. (*Id.* at 11.) The Referee noted that there had been a complete stop in payments by Windham Q for auto repairs, gas, tolls, travel, and yard work, and a decline in payments for office expenses, supplies, and telephone expenses. (*Id.* at 8-11.) Thus, based on the findings in the Referee's Report, the alleged injuries to Plaintiff have ceased or declined in the past two years. Therefore, contrary to Plaintiff's assertions, the Referee's Report actually demonstrates it is unlikely that she will suffer a continued, irreparable injury if the preliminary injunction is not granted.

Plaintiff argues that Stephen Napolitano has ceased his alleged tortious behavior while under the scrutiny of the Referee and this court. (Pl. Mot. Prelim. Inj. 16.) Plaintiff argues that, if the Referee's role is not expanded, Stephen Napolitano will likely resume his alleged tortious behavior. (*Id.*) Plaintiff has cited no evidence to support this speculation. (*Id.*)

Therefore, even if the court were to consider the Referee's Report, Plaintiff has still failed to demonstrate an irreparable injury in order to obtain a mandatory preliminary injunction. Because failure to demonstrate that any one of the criteria is met requires the motion be denied, the court would not even reach the other criteria for preliminary injunctive relief. *See Bangor Historic Track, Inc.,* 2003 ME 140, ¶ 10, 837 A.2d 129.

10

## CONCLUSION

Based on the foregoing, Plaintiff Sandra L. Napolitano's motion, individually and on behalf of Windham Q, LLC, pursuant to Maine Rule of Civil Procedure 65 for preliminary injunctive relief is **DENIED**.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated:  10/25/16

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 10/25/16
Copies sent via Mail___Electronically ✓

11

STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-16-19 ✓

SANDRA L. NAPOLITANO,               )
Individually and on behalf of       )
WINDHAM Q, LLC,                      )
                                    )
            Plaintiff,               )
                                    )
v.                                   )     ORDER ON PLAINTIFF'S MOTION FOR
                                    )     PARTIAL SUMMARY JUDGMENT
ARTHUR NAPOLITANO, SR. and           )
STEPHEN NAPOLITANO,                  )
                                    )
            Defendants.              )

Plaintiff Sandra L. Napolitano has moved for summary judgment pursuant

to Maine Rule of Civil Procedure 56 on Defendant Stephen Napolitano's

counterclaim for declaratory judgment and injunctive relief. For the following

reasons, Plaintiff's motion is denied in part and granted in part.

## BACKGROUND

Plaintiff and Defendant Arthur Napolitano are husband and wife. (Sandra

Napolitano Aff. ¶ 2.) Plaintiff and Arthur Napolitano are each 50% members

and the sole managers of Windham Q, LLC ("Windham Q"), which operates a

Dairy Queen franchise located in Windham, Maine. (*Id.*) Defendant Stephen

Napolitano is Arthur Napolitano's son and has worked as the general manager of

the Dairy Queen for more than sixteen years. (Sandra Napolitano Aff. ¶ 4;

Stephen Napolitano Add'l S.M.F. ¶ 19.)

Plaintiff filed a civil complaint, individually and on behalf of Windham Q, with the Superior Court on August 26, 2015. Plaintiff's civil complaint generally asserts that Stephen Napolitano has misused Windham Q's funds to pay his personal expenses and that Arthur Napolitano has made improper distributions and failed to act in the best interests of Windham Q. (Compl. ¶¶ 20-46.)

Arthur Napolitano filed an answer to the civil complaint on September 18, 2015. Stephen Napolitano filed his answer to the civil complaint on September 24, 2015. Arthur Napolitano also filed a complaint for divorce with the District Court on September 29, 2015. Stephen Napolitano amended his answer to the civil complaint on February 11, 2016, to add a counterclaim against Plaintiff for declaratory judgment that the parties had agreed that Stephen would receive an ownership interest in Windham Q in exchange for agreeing to work as the general manager of the Dairy Queen store. (Stephen Napolitano Am. Ans. & Countercl. ¶¶ 13-14.) Plaintiff filed an answer to the counterclaim on March 7, 2016. Both the civil action and family action were accepted for transfer to the Business and Consumer Court in June 2016. Although not consolidated, the two cases are being coordinated before the Business and Consumer Court.

Plaintiff filed a motion for partial summary judgment on Stephen Napolitano's counterclaim on August 11, 2016. Stephen filed an opposition to summary judgment on September 1, 2016. Plaintiff filed a timely reply on

2

September 8, 2016. Oral argument on all pending motions in this case was held on October 12, 2016.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the party moving for summary judgment bears the burden of persuasion on a claim or defense, then the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015. The burden then shifts to the non-moving party to respond with specific material facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). Even if one party's version of the facts appears more credible and persuasive, any genuine issue of material

3

fact must be resolved by the fact finder, regardless of the likelihood of success. *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732.

## ANALYSIS

Defendant Stephen Napolitano's counterclaim seeks a declaratory judgment that he has an enforceable agreement with Plaintiff and Arthur Napolitano that, in exchange for agreeing to work full-time as the general manager of the Dairy Queen store, Stephen Napolitano was to receive: (a) a 15% ownership share of Windham Q as soon as issues with his credit were addressed; and (b) Stephen would eventually receive a 50% ownership share of Windham Q and associated real estate from Plaintiff's estate.[1] (Stephen Napolitano Am. Ans. & Countercl. ¶¶ 3-4, 13.) Stephen also seeks injunctive relief ordering Plaintiff to transfer 7.5% of her ownership in Windham Q to Stephen Napolitano, to be increased to 50% from her estate, in compliance with the terms of the agreement. (*Id.* ¶¶ 13-14.)

Plaintiff's sole argument on summary judgment is that Stephen Napolitano's counterclaim is barred by the statute of frauds because there are no writings evidencing the alleged agreement. (Pl. Mot. Summ. J. 3-7.) The statute of frauds is an affirmative defense. M.R. Civ. P. 8(c). Thus, the statute

---

[1] Stephen Napolitano asserts the remaining 50% ownership of Windham Q would be shared by his full siblings who are not parties to this litigation. (Stephen Napolitano Am. Ans. & Countercl. ¶ 3.)

4

of frauds must be affirmatively pleaded in an answer, otherwise it is waived. *Greenlaw v. Rodick*, 158 Me. 440, 445, 185 A.2d 895, 897-98 (1962). An affirmative defense may be adequately pleaded even though the exact words used in Rule 8(c) are absent. *See Graffam v. Geronda*, 304 A.2d 76, 78 (Me. 1973). "Rule 8(c) is satisfied by any clear and unmistakable notice that the defense is being raised." 2 Harvey, *Maine Civil Practice* § 8:5 at 362 (3d ed. 2011).

Here, Plaintiff has not expressly pleaded the statute of frauds as an affirmative defense. (Pl. Ans. to Countercl. & Affirm. Defenses ¶¶ 1-7.) Plaintiff's first affirmative defense, however, avers that Stephen "has no agreement relating to his ownership of the Windham Dairy Queen that is enforceable under Maine law." (*Id.* ¶ 1.) This language is sufficient to put Stephen Napolitano on clear and unmistakable notice that Plaintiff is raising the statute of frauds defense.

Maine's statute of frauds provides that the actions based on the following agreements may not be maintained unless the agreement "is in writing and signed by the party to be charged therewith or by some person thereunto lawfully authorized": (a) any agreement that is not to be performed within one year, and (b) any agreement to give, bequeath, or devise by will to another, any real, personal, or mixed property. 33 M.R.S. § 51(5), (7).

5

To determine whether an alleged agreement is one not to be performed within one year, the court does not look to when the performance actually occurred or whether it was conceivable that performance would occur within or beyond one year. The court looks only to the parties' intent. *Great Hill Fill & Gravel v. Shapleigh*, 1997 ME 75, ¶ 5, 692 A.2d 928. The court must look to the circumstances of the case and whether the parties "plainly manifested an intent that the contract not be performed within one year." *Id.*

Regarding an agreement to devise by will, Maine's Probate Code further provides:

> A contract to make a will or devise, or not to revoke a will or devise ... can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

18-A M.R.S. § 2-701.

If an agreement falls within the statute of frauds, then it must be evidenced in writing and signed by the party against whom the agreement is to be enforced or another lawfully authorized person. 33 M.R.S. § 51. Nearly any form of writing will satisfy the statute of frauds. *McClare v. Rocha*, 2014 ME 4, ¶ 11, 86 A.3d 22. A series of writings may collectively satisfy the statute of

6

frauds, even if none of the writings does so separately. *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993).

The part performance doctrine is an exception to the statute of frauds. *Sullivan v. Porter*, 2004 ME 134, ¶ 10, 861 A.2d 625. An oral contract within the statute of frauds may still be enforced if the party seeking to enforce the agreement can prove by clear and convincing evidence: (1) the parties entered into a contract; (2) the party seeking to enforce the contract partially performed its obligation; and (3) the performance was induced by the other party's misrepresentation, which may be evidenced by acquiescence or silence. *Id.* at ¶ 11. The part performance doctrine is grounded in the principle of equitable estoppel, which involves detrimental reliance induced by misrepresentation and fraud. *Id.* ¶ 17. Equitable estoppel differs from promissory estoppel, which involves detrimental reliance on a mere promise. *Id.* ¶ 17 n.7. The Law Court has expressly stated that, for multi-year employment agreements, an employee's detrimental reliance on an employer's oral promise is not enough to avoid the statute of frauds under the part performance doctrine. *Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72, 75 (Me. 1991). To avoid the statute of frauds under the part performance doctrine, the employee must prove by clear and convincing evidence that their performance was induced by

7

fraud on the part of the employer. *Id.*; *see also Sullivan*, 2004 ME 134, ¶ 17, 861 A.2d 625.

A.    The 15% Ownership Interest in Windham Q

In support of her motion, Plaintiff asserts there was no written agreement governing Stephen Napolitano's employment with Windham Q; there was no written agreement to transfer a 15% ownership share of Windham Q to Stephen Napolitano; and that there was no agreement, written or oral, that Stephen's employment with Windham Q was contingent upon him receiving an ownership interest. (Pl. Supp'g S.M.F. ¶¶ 8-9, 14.) Plaintiff asserts that, even if there was an oral agreement to transfer a 15% ownership interest, Stephen has testified that any transfer would not happen immediately because the agreement was contingent upon Stephen resolving certain issues with his credit. (*Id.* ¶ 11.) Plaintiff further asserts that Stephen Napolitano admitted that it "would be a 'few years'" before his credit issues would be cleared up. (*Id.* ¶ 12.) Thus, according to Plaintiff, Stephen Napolitano's claim that there was agreement to transfer a 15% ownership interest to him is barred by the statute of frauds as an agreement not to be performed within one year. (Pl. Mot. Summ. J. 4-5.)

In opposition, Stephen Napolitano admits that there was no written agreement governing his employment and no written agreement to transfer a 15% ownership interest in Windham Q to him. (Stephen Napolitano Opp. S.M.F.

8

¶¶ 8-9.) Stephen asserts, however, that Plaintiff has misstated his deposition testimony. Stephen did not testify that it "would be a 'few years'" before his credit issues would be cleared up. (Stephen Napolitano Opp. S.M.F. ¶ 12.) Stephen's actual testimony was that it ultimately "was a few years," specifically two to three years, before his credit issues were cleared up. (*Id.*) Stephen asserts the parties had no understanding at the time the alleged oral agreement was made that it would take Stephen more than a year to clear up his credit issues. (*Id.*) Stephen asserts that, at that time, he was anxious to resolve his credit issues as soon as possible. (Stephen Napolitano Add'l S.M.F. ¶ 9.)

Viewing these facts in the light most favorable to Stephen Napolitano as the non-moving party, there are genuine issues of material fact whether the parties "plainly manifested an intent" that the Stephen's credit issues would not be resolved in within one year. Thus, there is a genuine issue of material fact whether the alleged agreement to transfer 15% ownership interest in Windham Q to Stephen as soon as his credit issues were resolved is within the statute of frauds. Therefore, summary judgment must be denied as to that issue.

B.  The 50% Ownership Share of Windham Q from Plaintiff's Estate

Plaintiff asserts there was no written agreement to provide Stephen Napolitano with any additional ownership interest in Windham Q from Plaintiff's estate. (Pl. Supp'g S.M.F. ¶ 8.) Thus, according to Plaintiff, Stephen

9

Napolitano's counterclaim that there was agreement to transfer a 50% ownership share of Windham Q and associated real estate to him Plaintiff's estate is barred by the statute of frauds as any agreement to devise by will any real, personal, or mixed property or as a contract to make a will or devise. (Pl. Mot. Summ. J. 4-5.)

In opposition, Stephen Napolitano asserts that the parties' agreement is evidenced in writing by Plaintiff's estate documents. (Stephen Napolitano Add'l S.M.F. ¶ 11.) A copy of Plaintiff's will, executed on July 15, 2010, is attached to an affidavit by Arthur Napolitano. (A. Napolitano Aff. Ex. A.) Plaintiff's will devises most of her property, including her interest in Windham Q, to Arthur as trustee of her separate Trust. (A. Napolitano Aff. Ex. A at 2.) Plaintiff's will references Stephen's option to purchase 50% of her Trust's interest in Windham Q. (*Id.*) A copy of Plaintiff's revocable trust agreement, also executed on July 15, 2010, is also attached to Arthur's affidavit. (*Id.* Ex. B.) Plaintiff's Trust agreement permits Arthur, as trustee, to authorize the sale of the Trust's interest in Windham Q and associated real estate to Stephen Napolitano at a discount. (*Id.* Ex. B at 10.) Plaintiff's Trust authorizes, upon the deaths of both Plaintiff and Arthur, the distribution of 50% of the Trust's interest in Windham Q to Stephen upon Stephen's purchase of the remaining 50% of the Trust's interest. (*Id.* Ex. B at 10-11.)

10

In her reply, Plaintiff asserts the estate documents cited by Stephen Napolitano have been superseded by more recent estate documents, which do not provide a purchase option or provide for Stephen to receive any interest in Windham Q from Plaintiff's estate. (Pl. Reply S.M.F. ¶¶ 11-15.)

Even viewing these facts in the light most favorable to him, Stephen Napolitano has failed to put forth any facts evidencing the existence of a written agreement to devise a 50% share of Windham Q to him in exchange for his service as the general manager of the Dairy Queen store. The estate documents cited by Stephen do evidence that there was an option for Stephen to purchase Plaintiff's interest from her Trust and that 50% of Plaintiff's interest would be devised to Stephen upon her and Arthur's death and his purchase of the remaining interest. However, the estate documents do not evidence that these provisions were drafted as part of an agreement related to Stephen's employment. The estate documents do not state the material provisions of a contract to make a devise by will in exchange for Stephen's employment; the estate documents do not reference any extrinsic evidence proving the terms of a contract to make the devise in exchange for Stephen's employment; and the estate documents do not constitute a writing signed by a decedent evidencing any sort of contract regarding Stephen's employment. Thus, Stephen Napolitano has failed to satisfy the statute of frauds regarding

11

his assertion that there was an agreement to transfer a 50% ownership share of Windham Q and associated real estate to him from Plaintiff's estate.

Moreover, Stephen Napolitano cannot rely on the part performance exception to the statute of frauds. Stephen asserts that, as part of the agreement, he immediately assumed the position as general manager of the Dairy Queen store at a salary below market-rate. (Stephen Napolitano Add'l S.M.F. ¶ 16.) Stephen asserts he worked long and hard managing the Dairy Queen for relatively little pay for more than sixteen years in reliance on the alleged agreement with Plaintiff and Arthur Napolitano. (*Id.* ¶¶ 18-19.)

Viewing those facts in the light most favorable to Stephen as the non-moving party, Stephen has set forth facts only demonstrating, at most, detrimental reliance on a promise. Stephen has set forth no facts demonstrating by clear and convincing evidence that his performance was induced by misrepresentations on the part of Plaintiff. As discussed above, detrimental reliance on a mere promise is not enough to avoid the statute of frauds. *Stearns*, 596 A.2d at 75. The plaintiff must prove by clear and convincing evidence that their performance was induced by fraud on the part of the adverse party. *Id.*; *see also Sullivan*, 2004 ME 134, ¶ 17, 861 A.2d 625. Because Stephen has set forth no evidence of fraud on the part of Plaintiff,

12

Stephen Napolitano's claim does not fall within the part performance exception to the statute of frauds.

Therefore, based on the foregoing, Plaintiff's motion for summary judgment must be granted as to Stephen Napolitano's claim that there was an agreement to transfer a 50% ownership share of Windham Q and associated real estate to him from Plaintiff's estate.

## CONCLUSION

Plaintiff Sandra L. Napolitano's motion pursuant to Maine Rule of Civil Procedure 56 for partial summary judgment is **DENIED IN PART** and **GRANTED IN PART**. Summary judgment is **DENIED** as to Stephen Napolitano's counterclaim for declaratory judgment that there exists an enforceable agreement to transfer a 15% ownership interest in Windham Q to Stephen Napolitano as soon as his credit issues were resolved. Summary judgment is **GRANTED** for Plaintiff Sandra L. Napolitano on Stephen Napolitano's counterclaim for declaratory judgment that there was an agreement to transfer a 50% ownership share of Windham Q and associated real estate to him from Plaintiff Sandra L. Napolitano's estate.

13

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 10/25/16

_____
Richard Mulhern
Judge, Business & Consumer Court

14