JOHN L. WOODBURY, in equity,

*vs.*

ELIZA GARDNER and another.

Somerset.    Opinion January 26, 1885.

*Equity.    Parol contracts for the conveyance of real estate.    Stat. 1874, c. 175.*
*R. S., c. 77, § 6.*

Ever since the enactment of stat 1874, c. 175, this court has had jurisdiction
for the enforcement of a parol agreement for the conveyance of land.

The re-enactment of stat. 1874, c. 175, in the R. S., of 1883, c. 77, § 6, was
not intended to be limited in effect by reason of its being accompanied by a
re-enactment of the various restricted provisions of former statutory
provisions.

A parol agreement for the conveyance of land may be enforced in equity in
behalf of the vendee whose partial performance has been such that fraud
would result to him unless the vendor be compelled to perform on his part.

Thus, where the the vendee, with the assent of the vendor, took open, actual
possession of the premises in pursuance of the agreement, made permanent
erections thereon, promptly paid the taxes assessed thereon to him by
direction of the vendor and substantially performed his agreement, specific
performance was decreed against the vendor's sole devisee.

BILL IN EQUITY.

Heard on bill, answer and proofs.    The opinion states the
material facts found by the court.

*D. D. Stewart*, for the plaintiff, cited : *Wilton* v. *Harwood*,
23 Maine, 133 ; *Rowell* v. *Jewett*, 69 Maine, 303 ; *Lewis* v. *Small*,
71 Maine, 552 ; *Ash* v. *Hare*, 73 Maine, 403 ; *Potter* v. *Jacobs*,
111 Mass. 36 ; *Somerby* v. *Buntin*, 118 Mass. 287 ; *Malins* v.
*Brown*, 4 Comstock, 403 ; *Parkhurst* v. *Van Cortland*, 14 Johns.
15 ; *Caton* v. *Caton*, L. R. 1 Ch. App. Cas. 148 ; *Crook* v. *Corp.*
*of Seaford*, L. R. 6 Ch. App. Cases 553 ; *Pain* v. *Coombs*, 1
DeG. and J. 34 ; *Coles* v. *Pilkington*, L. R. 19 Eq. 174 ; Pom-
eroy Spec. Perf. § § 115, 117 ; *Lester* v. *Foxcroft*, Colles' P. C.
108.

*James Wright*, for the defendants.

There is no pretense of any written contract, or deed, or legal
title, or mortgage of the Gardner farm in this case.    In *Rowell*

v. *Jewett*, 69 Maine, 293, the court hold that unfilial conduct and neglect are sufficient to break the conditions of an existing mortgage given to secure the support of a parent; and I submit that if such causes as are disclosed by that case are sufficient to forfeit a claim under a deed, how much more will the treatment disclosed by this report suggest the injustice of the plaintiff's claim to have a deed. The testimony of John L. Woodbury and wife should not be received. 59 Maine, 361.

VIRGIN, J. Bill in equity to enforce specific performance of an alleged oral agreement for the conveyance of a farm, brought against the sole devisee of the vendor and also against one claiming as assignee of a mortgage thereon. Among other defences the statute of frauds is interposed.

When a party to an agreement, fair and just in its terms, understandingly entered into and concluded, is injured, without default on his own part, by its non-fulfilment of the other party, the most direct and satisfactory remedy which he instinctively seeks is specific performance. This practical result he cannot obtain by the common law, for that measures all losses by money; but equity comes in to supply this more complete justice, and has laid down certain rules of relief by which, when its circumstances bring it within them, every contract susceptible of substantial enjoyment, may be enforced.

In this state, the early equity jurisdiction of the court was limited to a very few subjects. It was gradually from time to time extended to others, until 1874, when the legislature conferred " full equity jurisdiction according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law." St. 1874, c. 175. And notwithstanding the clause — " in all other cases," the re-enactment of this statute in R. S., (1883) c. 77, § 6, was not intended to be limited in effect by reason of its being accompanied by a re-enactment of the various restricted provisions of the former statutes. *Glass* v. *Hulbert*, 102 Mass. 33; *Somerby* v. *Buntin*, 118 Mass. 287.

Until the St. 1874, c. 175 took effect, this court, on account of limited equity jurisdiction, could not decree specific perform-

ance of unwritten agreements for the conveyance of land, under
any circumstances. *Stearns* v. *Hubbard*, 8 Maine, 320 ; *Wilton*
v. *Harwood*, 23 Maine, 131 ; *Bubier* v. *Bubier*, 24 Maine, 42 ;
*Farnham* v. *Clements*, 51 Maine, 426. But now that this broad,
general power is conferred, jurisdiction extends to the enforce-
ment of all oral agreements when the parties have not a " plain,
adequate and complete remedy at law," and the circumstances
are such as bring them within the established rules of equity
governing such matters.

As this is the first case of the kind which has come before this
court since the enactment of the above statute, it may be
excusable to remark that it has long been held in England that
part performance of an unwritten contract to convey land may
authorize a court of equity to compel specific performance by the
other party in contradiction to the positive terms of the statute
of frauds. *Foxcroft* v. *Lester*, 2 Vern. 456 ; *Bond* v. *Hopkins*,
1 Sch. & Lef. 433 ; *Coles* v. *Pilkington*, L. R. 19 Eq. 174.
And the same doctrine has been adopted by all (save three or
four) of the states of the Union (Pom. Eq. Jur. § 1409), some
of them making it an express exception to the statute of frauds.
Wat. Sp. Per. § 257.

The ground of the remedy is an equitable estoppel based on
an equitable fraud. After having induced or knowingly permitted
another to perform in part an agreement, on the faith of its full
performance by both parties and for which he could not well be
compensated except by specific performance, the other shall not
insist that the agreement is void. *Morphett* v. *Jones*, 1 Swan.
181 ; *Buck* v. *Harrop*, 7 Ves. 346 ; *Potter* v. *Jacobs*, 111 Mass.
32, 37. In other words, the statute of frauds having been
enacted for the purpose of preventing frauds should not be used
fraudulently. *Mestaer* v. *Gillespie*, 11 Ves. 621, 627 ; *White-
bread* v. *Brochurst*, 1 Bro. C. C. 417 ; *Ash* v. *Hare*, 73 Maine,
403 ; Pom. Eq. Jur. § 921.

Compensation in damages for the breach of an agreement to
convey land is not regarded as adequate relief (*Jones* v. *Robbins*,
29 Maine, 351 ; *Foss* v. *Haynes*, 31 Maine, 81 ; *Snowman* v. *Har-
ford*, 55 Maine, 199), hence parties thereto may resort to equity.

To be enforceable, the agreement must be concluded, unambiguous, founded on a valuable consideration, fair and just in all its parts, and such that its specific performance will not be harsh or oppressive upon the party against whom it is sought. Pom. Eq. Jur. § 1405 and cases in notes; and proved to the satisfaction of the court. *Parkhurst* v. *Van Cortland*, 1 Paige Ch. 273; *Neale* v. *Neales*, 9 Wall. 1, 12.

To exclude the operation of the statute of frauds, the acts of performance must be such as have unequivocal reference to the agreement sought to be enforced, show that they were done in pursuance and execution of it; that damages recoverable in law would not adequately compensate the plaintiff, and that fraud and injustice would result to him if the agreement be held inoperative. Wat. Sp. Per. § 261, and cases in note 3; White & T. L. Cas. 516; *Williams* v. *Morris*, 95 U. S. 457. In other words, partial performance is such a carrying out of the agreement by one party thereto, that fraud would result to him, unless the other party be compelled to perform his part of it. *Tilton* v. *Tilton*, 9 N. H. 390; *Ash* v. *Hare*, 73 Maine, 403.

The taking of open, actual possession of the premises by the vendee, with the assent of the vendor, pursuant to, and in execution of an agreement for their sale, has always been considered an act of performance. *Morphett* v. *Jones, supra; Knickerbacker* v. *Harris*, 1 Paige Ch. 209; *Potter* v. *Jacobs*, 111 Mass. 32; *Wharton* v. *Stoutenburgh*, 35 N. J. Eq. 266; Wat. Sp. Per. § § 272–277; and when combined with the making of valuable improvements by way of permanent erections thereon, or by skill and labor bestowed in cultivation, whereby the land was greatly enhanced in value, they all become important and pregnant acts which can be reasonably referred only to an agreement for a substantial interest in the property. *Lester* v. *Foxcroft, supra; Surcome* v. *Penninger*, 3 De G. M. & G. 571; *Parkhurst* v. *Van Cortland*, 14 Johns. 15; *Freeman* v. *Freeman*, 43 N. Y. 34; *King's Heirs* v. *Thompson*, 9 Pet. 204; *Neale* v. *Neales, supra*. And the case is peculiarly strengthened when it also appears that the land has been, by direction of the vendor, assessed to the vendee ever since possession taken, and that he

has promptly paid the taxes. Wat. Sp. Per. citing *Miranville* v. *Silverthorn*, 1 Gr. (Pa.) 410.

This doctrine applies to gifts from parent to children. *Lobdell* v. *Lobdell*, 36 N. Y. 327. Accordingly, where a step-father agreed with his step-son, just of age and about to leave home, that if he would work the farm and take care of the family, he should have a deed of one-half of the farm, on substantial performance by the son the court decreed specific performance. *Twiss* v. *George*, 33 Mich. 253. So, in the absence of such relationship, where a husband and wife accepted the offer of an aged person in poor health, that if they would give himself and nurse lodging and board in a certain house and take care of him until his death, he would convey the house to his wife; and they fulfilled their agreement and expended two hundred dollars in repairs, specific performance was decreed against his heirs. *Watson* v. *Mahan*, 20 Ind. 223; see also *Hiatt* v. *Williams*, 72 Mo. 214; *Bohanan* v. *Bohanan*, 96 Ill. 591; *Littlefield* v. *Littlefield*, 51 Wis. 23.

The following facts are fully substantiated by the proofs and make out a strong case within the rules above mentioned.

J. O. Gardner, some seventy years of age, together with his wife, a few years his junior, resided on their homestead farm, in Canaan. The plaintiff, rising fifty years of age, together with his wife (daughter of the Gardners) resided on his farm, in Pittsfield. During the summer of 1877, Gardner frequently importuned the plaintiff to sell his property in Pittsfield, move on to his homestead in Canaan, support him and his wife during their respective lives and have the homestead. Finally, in September following, Gardner and the plaintiff made an oral agreement, that the plaintiff should sell his farm, farming tools, etc. in Pittsfield, remove with his wife and family on to the homestead, carry on the farm, maintain Gardner and his wife during life by furnishing them such support as they might need, keep Gardner's horse and carriage for their convenience, but the plaintiff to have the use of it on the farm; Gardner and wife to pay their own doctor's bills, furnish their own clothing, and from choice to do their own house work so long as they were able and

Gardner to work only when he pleased. That Gardner should convey the farm to the plaintiff taking back a mortgage thereof conditioned for the support of himself and wife as above stipulated.

Thereupon the plaintiff, assisted by Gardner, sold and conveyed his farm and some personal property in Pittsfield, for twenty-six hundred dollars, with which he paid outstanding debts amounting to some eighteen hundred or nineteen hundred dollars; and on October 4, 1877, removed with his family to Canaan, when on delivery thereof by Gardner, he entered into full possession of the homestead in strict pursuance and execution of the agreement, and for no other purpose, occupying the whole premises, except two or three rooms which Gardner and his wife occupied.

The plaintiff took with him to the homestead rising one thousand dollars worth of personal property, comprising neat stock, horse. farming tools, wagons, grain, etc. Finding the farm, as previously informed by Gardner, somewhat run down, the plaintiff purchased and expended on it, during the first two years, forty tons of hay, fifteen dollars worth of yard manure, thirteen hundred pounds of phosphates, and five hundred pounds of plaster, cleared the bushes from the pasture, re-set more than one hundred rods of fence, cultivated new land, and with other lumber and timber added to some already there — one-half of which he purchased of a former tenant — erected a new stable, at an expense of two hundred and fifty dollars, and caused all of the buildings to be insured; all with the full knowledge and consent of Gardner. He also paid the taxes upon the homestead and personal property for the next and every succeeding year since, the same having, by direction of Gardner, been assessed to him.

Soon afterward, the plaintiff and Gardner went to an attorney at law to execute the deed and mortgage. The attorney advised them, and they consented, to postpone their execution, until after the trial of a pending action against the plaintiff by the holder on a note of ten or eleven hundred dollars, given for a patent right, as it might involve the homestead.

Subsequently, some unpleasantness arose between the parties; and although Gardner and his wife continued to reside and be

supported by the plaintiff on the homestead until Gardner's decease in April, 1882, he frequently refused to convey according to his agreement. Immediately after the burial of Gardner, his widow (one of the defendants) left, and has since resided with the other daughter (the other defendant) and has constantly refused to be supported by the plaintiff, and to give a deed and take a mortgage for her support, as her husband, with full knowledge on her part had agreed, although the legal title to the premises is in her as sole devisee of her husband.

We have said that the facts are fully substantiated, which is emphatically true upon the direct testimony and admissions of both parties; and on no other theory than that established by the direct testimony, are the undisputed acts and conduct of the parties to the agreement reconcilable. *Neale* v. *Neales*, 9 Wall. 1, 10. But we do not mean to intimate that there is not some conflicting testimony relating to minor matters, yet the main facts stand uncontradicted. Nor is there any doubt that considerable bad blood was manifested by the exchange of cross words and abusive epithets, between the parties some time before the decease of Mr. Gardner, and had this been all on one side we should long hesitate before sustaining the bill. But in this respect, this case is like many others of like nature. In the language of Mr. Justice DAVIS, in *Neale* v. *Neales*, last cited, 'it is to be regretted that the contest over this property, like all contests between near relations, has elements of bitterness in it." But they did not grow out of any alleged non-fulfilment of the agreement on the part of the plaintiff, for the declarations of Mr. Gardner, testified to by several disinterested witnesses, all admit that he never called upon the plaintiff in vain for support. Nor is there wanting evidence from the same reliable sources showing that it was far from an easy matter to "get along pleasantly" with the elder parties. Moreover, the testimony contains more than a mere suggestion that they were exposed to bad influences, ill-conceived advice. It is utterly incredible that Mr. Gardner would have voluntarily resorted to the gross fraud of attempting to put the mortgage, set up by one of the defendants, upon the homestead. Neither can we believe that this defendant understood the allegations in her answer relating thereto when she

made oath to them, they are so inconsistent with the facts fully proved as also by her own deposition.

The mortgage cannot be upheld. Its fraudulent character is fully exposed. It was instigated as a fraud upon this plaintiff, and it limped with fraud every step it took, the defendant assignee being fully cognizant of it. *Lewis* v. *Small*, 71 Maine, 552; *Ash* v. *Hare*, 73 Maine, 401.

There was no waiver. The parties undertook to settle their troubles by reference, which proved abortive. The plaintiff has continued in full possession, and has surrendered no claim which he seeks to enforce. The nonsuit of his action was no bar to this suit.

Neither is there any legal objection to the competency of the plaintiff as a witness, he not coming within any exception to R. S., c. 82, § 93, enumerated in § 98.

Mrs. Gardner being sole devisee of the homestead is the proper party. It is a fundamental maxim that, "Equity looks upon things which ought to be done, as actually performed;" consequently, when a contract is made for the sale of an estate, equity considers the vendor as the trustee of the vendee, holding the vendee's legal estate on a naked trust. *Linscott* v. *Buck*, 33 Maine, 530; Sug. Vend. (Perkins' ed.) c. 5, § 1; Pom. Eq. Jur. § § 364 *et seq.* The equitable title changes when the contract is completed. The consequences of this doctrine follow. As the vendee's legal estate is held on a naked trust by the vendor, this trust, impressed upon the land, follows it in the hands of his heirs and devisees, and his grantees with notice. *Cotter* v. *Layer*, 2 P. Wms. 332, 623; *Vawser* v. *Jeffrey*, 16 Ves. 519; Pom. Eq. Jur. 368 and notes.

There is no intimation in the case that any debts exist against the estate. *Hayes* v. *Cemetery*, 108 Mass. 400, 403.

Unless the agreement be performed, this plaintiff will be greatly damnified, and we have no hesitation in decreeing its specific performance. Decree accordingly.

*Bill sustained, with costs.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and EMERY, JJ., concurred.