STATE OF MAINE

Cumberland, ss.

JOHN F. CHASE

    Plaintiff and Counterclaim Defendant

v.

BRUCE G. CHASE

    Defendant and Counterclaim Plaintiff

and

JANET CHASE

    Counterclaim Plaintiff

SUPERIOR COURT

STATE OF MAINE
Cumberland, ss. Clerk's Office

AUG 21 2018
9:03 a.m.
RECEIVED

Docket No. CUMSC-CV-16-0433

## DECISION AND JUDGMENT

A bench trial on the counterclaim for unjust enrichment in this civil case was held July 11-12, 2018, after which the parties submitted post-hearing briefs, at which point the court took the case under advisement.

### *Procedural Background*

This case originated with Plaintiff John Chase's complaint to enforce the provision of a promissory note given to him by Defendant Bruce Chase that required Bruce Chase to designate John Chase solely and irrevocably as the beneficiary of certain life insurance policies insuring Bruce Chase's life.

In response to John Chase's complaint, Bruce Chase filed a counterclaim against John Chase, and was joined as a counterclaim plaintiff by Janet Chase, Bruce

1

Chase's wife. *See* M.R. Civ. P. 20(a). Janet Chase and Bruce Chase's counterclaim alleged that John Chase was liable to them for breaching an oral contract, the details of which are set forth below. The counterclaim went through a couple of iterations, the most recent of which is captioned New Amended Counterclaim.

John Chase moved for summary judgment in his favor on his complaint and on Bruce and Janet Chase's New Amended Counterclaim. Bruce and Janet Chase opposed John Chase's motion in all respects. In an order dated and docketed December 15, 2017, the court granted John Chase's motion for summary judgment as it related to his complaint, and granted his motion in part as it related to Bruce and Janet Chase's New Amended Counterclaim for breach of express contract. *See* Order on Plaintiff's Motion for Summary Judgment (Dec. 15, 2017).

The court denied John Chase's summary judgment motion to the extent Bruce and Janet Chase were pursuing a claim for restitution based on unjust enrichment and part performance of the alleged oral contract. It is those claims that went to trial in July 2018.

*Findings of Fact and Conclusions of Law*

Based on the entire record, the court makes and adopts the following findings of fact and conclusions of law, and renders judgment as set forth below.

1. Plaintiff and Counterclaim Defendant John Chase and Defendant and Counterclaim Plaintiff Bruce Chase are brothers. John Chase is 53 years old; Bruce Chase is 66 years old. Counterclaim Plaintiff Janet Chase is Bruce Chase's wife.

2. John Chase and Bruce Chase are both former police officers—John Chase having been with the Westbrook Police Department and Bruce Chase with the Portland Police Department.

3. While still employed with the Westbrook police, John Chase began a construction business that eventually expanded to the point that he decided to leave police work and devote himself full-time to the business, which is now known as Chase Custom Homes and Finance, LLC ["Chase Custom Homes"]. John Chase owns and operates several other businesses, including one called Auto Shine Car Wash.

4. At all relevant times, John Chase has owned a residential property in Naples, Maine. The property, known as Big Bear Point, consists of multiple acres and has several substantial residences and other buildings, as well as significant frontage on Long Lake. With limited exceptions, John Chase has resided at the Big Bear Point property in recent years.

5. After leaving law enforcement, Bruce Chase became involved in the property repair and maintenance field. He owned and operated a property maintenance and handyman business in greater Portland for some years, until 2009. One of his commercial customers was the Infinity Federal Credit Union. At some point, Infinity retained a property management firm, Dirigo Management, to handle property maintenance, and Bruce Chase continued, either as a Dirigo employee or as an independent contractor.

3

6. Bruce Chase encouraged the management at Infinity to use John Chase's construction business for construction and renovation project. However, John Chase had developed his own associations with Infinity management. Although Infinity hired John Chase's company to do well over a million dollars in construction work over the years, the evidence did not show that Bruce Chase's recommendations were the reason why John Chase's company got this business.

7. In 2000, around the time Bruce and Janet Chase were married, Chase Custom Homes built and sold them a new home on a residential building lot at 25 Chase Hill Road in Westbrook. As a wedding gift to Bruce and Janet Chase, John Chase arranged for his company to sell the home to Bruce and Janet Chase at the company's cost for constructing the residence, and did not charge Bruce and Janet Chase for the cost of the lot. The price Bruce and Janet Chase paid for the property was substantially less than the property's market value at the time of the purchase, although the evidence was too conflicting for the court to set a value on the difference.

8. To facilitate the closing, John Chase asked Bruce and Janet Chase to execute a durable power of attorney in favor of John Chase's attorney, Richard Abbondanza, Esq., and attorney Abbondanza handled the closing on behalf of Bruce and Janet Chase. The power of attorney apparently was still in effect as of the time of trial.

9. After Dirigo Management took over responsibility for property management and maintenance at the Infinity Federal Credit Union, Bruce Chase

4

became increasingly dissatisfied with his work, and he often shared his dissatisfaction with John Chase during their conversations.

10. On New Year's Eve in 2009, John Chase and his wife at the time, Sherry Chase, and Bruce and Janet Chase all went to dinner at the DiMillo's restaurant in Portland. Over dinner, John and Sherry Chase made what Bruce and Janet Chase characterized as a "life-changing proposal." The parties agree that the proposal covered the following material terms:

- Bruce Chase would leave his property repair and maintenance business and Janet Chase would leave her job, which involved administrative work at Mercy Hospital. Janet Chase was working about 32 hours per week at an annual salary of $26,000.

- Bruce and Janet Chase would sell their home on Chase Hill Road, so that they could move into a residence to be provided for them rent-free on the Big Bear Point property in Naples. In recognition of the rent-free living arrangement, the net proceeds of sale of Bruce and Janet Chase's home would be turned over to John and Sherry Chase to help defray their costs associated with the proposal.

- Bruce Chase would be responsible for maintenance of the Big Bear Point property at an annual salary of $65,000 per year, which he told John was what he had been earning in his business.[1] Janet Chase would work on

---

[1] John Chase points out that Bruce and Janet Chase failed to turn over their tax return or returns for the 2009 tax year, and asks the court to infer that Bruce Chase was not earning as much as he claimed to

5

personal administrative tasks and projects for John and Sherry Chase at an annual salary of $26,000, matching what she had been earning at her job with Mercy Hospital.

- John Chase would pay for Bruce and Janet Chase's health insurance coverage.

- Bruce and Janet Chase could stay at a Florida property owned by John Chase for periods over the winter. It does not appear there was any specific discussion about how often—or for how long—Bruce and Janet Chase could stay at the Florida property.

11. Although the parties agree about the foregoing aspects of John and Sherry Chase's proposal, they disagree about the duration of what John and Sherry Chase were proposing to Bruce and Janet Chase.

12. Bruce and Janet Chase, with support in the testimony of Sherry Chase, who has since been divorced from John Chase, contend that John Chase proposed for them to live at the Big Bear Point property as long as they wished and that Bruce Chase could continue to work and be compensated for maintenance work at least to age 65 or until he could no longer do the work. Bruce and Janet Chase, again with support from Sherry Chase, also contend that John Chase promised to pay for their health insurance until they were both eligible for Medicare at age 65.

---

be. Bruce Chase did not substantiate his claim with tax returns or other corroboration of his earnings, so the court does not make an affirmative finding regarding his earnings as of 2009 and before.

13. John Chase, on the other hand, says he never promised that Bruce and Janet Chase could live at the Big Bear Point property for as long as they wished, or that Bruce Chase could work until age 65 or until he could no longer work. He also denies committing to pay their health insurance to age 65. Instead, John Chase says the commitments he made were to last only about five years—until the end of 2014, when Bruce Chase would be eligible to take Social Security,[2] at which point he and Janet Chase could move to Florida as they planned.

14. John and Sherry Chase agreed that Bruce and Janet Chase could have an opportunity to consider the proposal before deciding. Within a short time after the New Year's Eve dinner, Bruce and Janet Chase told John and Sherry Chase that they would accept what they understood to be the proposal.

15. Neither the terms of John and Sherry Chase's proposal nor the terms of Bruce and Janet Chase's acceptance were ever put in writing. None of the parties offered any notes or other memorialization of the agreement. At one point, John Chase said he would have attorney Abbondanza prepare a document reflecting the agreement, but that never happened. Although the agreement was never put in writing, the parties took steps to implement it.

16. Bruce and Janet Chase put their Chase Hill Road residence on the market. When the property sold in June 2010 for $299,999, they turned over to John Chase

---

[2] Bruce Chase was born in April 1952. *See* Plaintiff's Ex. 9.

the entire proceeds of sale (after payment of a line of credit on the property and closing costs), amounting to about $113,000. They did so willingly.

17. John Chase knew that Bruce Chase was unhappy in his work and believed that Bruce and Janet Chase planned to relocate to Florida when Bruce Chase became eligible for Social Security. His intention was to furnish them with income through employment and a place to live expense-free until they could move.

18. On the other hand, Sherry Chase supported Bruce and Janet Chase's claim that John Chase promised they could live at Big Bear Point and would employ Bruce Chase for as long as Bruce Chase was able to work and at least until age 65. Because there is nothing in writing, such an oral promise would be unenforceable in contract for the reasons outlined in the summary judgment order in this case.

19. There is no evidence that John Chase intended to mislead Bruce and Janet Chase. At least as to the duration element of their agreement, the parties never had a true meeting of minds. Because there was a meeting of minds on the terms of the agreement for the first few years, the different understandings did not emerge until Bruce Chase turned 62, at which point John Chase considered his part of the agreement to be at an end.

20. As promised, John and Sherry Chase arranged for Bruce and Janet Chase to move into a large home near the lakefront on the Big Bear Point property. Bruce and Janet Chase moved to a cottage at Big Bear Point in April 2010, while the home they were to occupy was being constructed at 37 Big Bear Point. They moved into the 37 Big Bear Point home in September 2010.

8

21. Bruce Chase closed his handyman and property maintenance business. Janet Chase left her job at Mercy Hospital. Bruce Chase began handling maintenance at the Big Bear Point property and Janet Chase began handling personal administrative tasks for John and Sherry Chase.

22. One early change to the agreement was that after a few weeks or months, John Chase became aware of issues or conflicts between Janet Chase and others in the Chase Custom Homes office, decided to terminate Janet Chase's work and discontinue paying her salary. Bruce and Janet Chase apparently went along with this.

23. Otherwise, the agreement proceeded for several years along the lines of what the parties had agreed on. Bruce and Janet Chase occupied a spacious and comfortable home at the Big Bear Point property without having to pay rent or property taxes, and John and Sherry Chase lived in another home on the property. Bruce and Janet Chase stayed at the Florida property on several occasions for up to months at a time.[3] John Chase paid Bruce Chase an annual salary of $65,000 for handling the maintenance responsibilities at the Big Bear property, and covered the cost of Bruce and Janet Chase's health insurance.

24. In or around 2013, John and Sherry Chase separated. John Chase moved away temporarily from the Big Bear Point property and Sherry continued to reside there temporarily. John Chase told Bruce Chase that he should "do whatever Sherry

---

[3] The longest stay of more than two months was the result of Bruce Chase telling John Chase that Bruce Chase was terminally ill, which later proved to be a falsehood.

wants" in connection with the property. At one point, Sherry Chase wanted access to a snow plow that was in a locked garage or storage building and she enlisted Bruce Chase's help in cutting the lock and gaining access.

25. A divorce action between John and Sherry Chase ensued. At one point, Bruce Chase agreed to submit an affidavit for use in the divorce case, in response to a request from Sherry Chase's attorney. John Chase saw this as Bruce and Janet Chase taking Sherry Chase's side in the divorce. At some point, Sherry Chase left the Big Bear Point property and John Chase moved back.

26. Toward the end of 2014, consistent with his own understanding of the agreement, John Chase discontinued paying Bruce Chase's salary because Bruce Chase had become eligible to collect Social Security. As far as the record shows, Bruce Chase accepted this without protest, which does call into question his understanding of this aspect of the agreement.

27. However, Bruce and Janet Chase continued to live at 37 Big Bear Point.

28. In 2015, Bruce Chase was charged with a felony theft offense in the Cumberland County Unified Criminal Docket. *See* Plaintiff's Ex. 9 (Judgment and Commitment in State v. Bruce Chase, Me. Unified Crim. Dkt., No. CUMCD-CR-14-2833). He was accused of stealing nearly $160,000 from his sister-in-law, Penelope Cobb. In May 2015, Bruce Chase pleaded guilty to two Class B charges of theft by unauthorized taking. *See id., see also* 17-A M.R.S. § 353(1)(B)(1). Pursuant to the plea agreement, he was sentenced to two years in prison with all but 60 days

10

suspended and two years of probation, and was ordered to pay restitution to Penelope Cobb in the amount of $159,138.57.

29. Bruce and Janet Chase had no means of paying restitution, so John Chase provided the necessary funds, which enabled Bruce Chase to make payment of restitution in full on the day of sentencing, according to the Judgment and Commitment. *See* Plaintiff's Ex. 9. Around the same time, John Chase paid $51,222.73 in credit card debt owed by Bruce and Janet Chase. Bruce Chase admitted to John Chase that many of the credit card accounts were opened by him in Janet Chase's name without her knowledge. Bruce Chase had engaged in similar behavior before, by opening credit card accounts in his daughter Amanda's name without her knowledge.

30. Bruce Chase agreed to repay John Chase for amounts that John Chase had advanced for restitution, Bruce Chase's legal fees and credit card debt. Bruce Chase executed a promissory note in favor of John Chase in the amount of $228,013.30. The note is secured by several life insurance policies on Bruce Chase's life, and it requires Bruce Chase to designate John Chase as irrevocable beneficiary and to make all premium payments on the policies.

31. After getting out of jail in 2015, Bruce Chase returned to work for John Chase, but the new arrangement did not last long. In early 2016, John Chase terminated Bruce Chase's employment for what John Chase termed insubordination.

32. In April 2016, John Chase directed his attorney to send Bruce and Janet Chase a letter notifying them that they were to vacate the 37 Big Bear Point

11

property within 30 days. They did so in May 2016. Although Bruce and Janet Chase claimed to have been given so little time to move that they had to leave behind a substantial quantity of their own property, they did not prove what was left or its value, or that any demand for its return was ever made. Thus, they did not prove their property claim and it is not discussed further.

33. John Chase brought this action against Bruce Chase in November 2016. Bruce and Janet Chase brought a counterclaim and the court eventually designated Janet Chase as an intervenor and counterclaim plaintiff aligned with Bruce Chase. John Chase was granted summary judgment on the complaint and on most aspects of the counterclaim. Bruce and Janet Chase's claim for restitution and unjust enrichment was the only remaining aspect of the counterclaim.

34. However, most or all of the same evidence that would have been relevant to a breach of express contract claim was presented at trial, because Bruce and Janet Chase's restitution claim required them to prove, among other things, that they conferred a benefit upon John Chase in reliance on his promises to them.

35. Having now heard that evidence, the court is even more firmly persuaded than before that the agreement Bruce and Janet Chase claim was reached cannot be enforced as an express contract or even in quantum meruit, not only because of the Statute of Frauds, but also because there was no meeting of the minds on the duration of the agreement.

36. Moreover, Bruce and Janet Chase cannot rely on the part performance doctrine to prove their claim. The dispute in this case has to do with the duration of

12

the agreement; the parties were in agreement on what the agreement entailed during its initial years. Thus, the fact that Bruce and Janet Chase partly performed their side of the agreement, as did John Chase his side, does not shed any light or raise an estoppel regarding the duration of the agreement.

37. Also, perhaps because the fact that an employee starts work does not bear on whether there was a contract of employment for more than one year, the Law Court has disapproved the part performance doctrine as a means of circumventing the Statute of Frauds in the context of employment and services contracts. *See Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72, 75 (Me. 1991) ("[W]e reject the part performance doctrine as an avenue for avoidance of the statute of frauds in the employment context"); *Eckenrode v. Heritage Management Corp.*, 480 A.2d 759, 762 (Me. 1984) ("It is the general rule in cases involving oral contracts for services not to be performed within one year that part performance by the party claiming breach will not suffice to bar the application of the statute of frauds.")[4]

38. The elements of a claim for unjust enrichment are:

[(1)] a benefit conferred upon the defendant by the plaintiff; [(2)] an appreciation or knowledge by the defendant of the benefit; and [(3)] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994).

---

[4] The *Stearns* decision indicated that "equitable estoppel, based upon a promisor's fraudulent conduct, can avoid application of the statute of frauds and that this principle applies to a fraudulent promise of employment." 596 A.2d at 75. However, no claim of fraud was pleaded or proved in this case.

13

39. Bruce and Janet Chase conferred benefits on John Chase in three ways. They rendered services to him and his businesses. They turned over to him the $113,000 from the proceeds of the sale of their Chase Hill Road home. Bruce Chase turned over to John Chase the proceeds from the sale of a truck.

40. Although Bruce and Janet Chase claimed to have conferred a benefit on John Chase in additional ways, the evidence did not bear out that claim. For example, Bruce Chase failed to prove that he conferred a financial benefit on John Chase by recommending John Chase's business to Infinity Federal Credit Union. Although John Chase's business did derive significant revenue from doing business with Infinity Federal Credit Union, the evidence did not show that this benefit was a result of Bruce Chase's recommendations as opposed to John Chase's own relationships with the management of the Credit Union.

41. Regarding the three forms of benefit that Bruce and Janet Chase did confer, these benefits clearly meet the first two above enumerated elements, in that the services rendered and the funds turned over clearly represented a benefit and John Chase knowingly accepted the benefit.

42. It is the third element that is in question. Although John Chase did accept and retain the benefit of the sale proceeds from the Chase Hill Road property and the truck, and accepted and retained the benefit of the services of Bruce and Janet Chase, the question is whether, given the benefits he conferred upon Bruce and Janet Chase in carrying out his side of the agreement over time, he should be compelled to return any of what they turned over to him.

14

43. As to the services rendered by Bruce and Janet Chase, the fact that they were fully compensated at the agreed-on rate for all of the services they rendered means that John Chase was not unjustly enriched. Bruce and Janet both testified that they rendered services for which they were not compensated, but the court does not find that they conferred any cognizable benefit through their services for which they were not compensated. There is no justification for requiring John Chase to pay more for Bruce and Janet Chase's services than he already has paid, either directly or through the businesses he owns and operates.[5]

44. As to the proceeds of sale of the truck, John Chase arranged for his business to sell Bruce Chase the truck for $1.00, so there is no basis for requiring John Chase to make restitution for the sales proceeds that Bruce Chase later turned over to him. John Chase was simply getting back what he had previously given, and Bruce Chase had the benefit of the use of the truck in the meantime. Thus, there was no net benefit to John Chase from the $5,000 in sales proceeds that he received.

45. The third benefit that Bruce and Janet Chase conferred upon John Chase—the $113,000 in sales proceeds—merits more discussion.[6] A starting point is to note that John Chase's retention of the $113,000 in sales proceeds cannot be viewed in isolation, because it represented just one component of an agreement that

---

[5] The evidence indicated that most of the benefits paid to Bruce and Janet Chase were not paid by John Chase individually but by businesses he owns. It was not disputed that the payments made by his businesses for the benefit of Bruce and Janet Chase were arranged and conferred by John Chase.

[6] John Chase in his proposed findings contends that Bruce Chase waived any claim to return of the proceeds during his testimony. The court does not view that testimony as a waiver of Bruce and Janet Chase's unjust enrichment claim.

15

covered a six-year span and that saw Bruce and Janet Chase accept and retain multiple benefits conferred upon them by John Chase. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 62 (2011) ("Even if the claimant has conferred a benefit that results in the unjust enrichment of the recipient when viewed in isolation, the recipient may defend by showing that some or all of the benefit conferred did not unjustly enrich the recipient when the challenged transaction is viewed in the context of the parties' further obligations to each other.")

46. John Chase's evidence presented and quantified in exhaustive detail the various benefits John Chase conferred upon Bruce and Janet Chase.

47. However, Bruce Chase's and Janet Chase's services to John Chase and the salaries Bruce Chase and Janet Chase received in exchange for those services are not part of the calculation of the net benefit to each party, because the value of the services was offset by the value of the compensation paid for the services. Also excluded is the amount John Chase advanced in 2015 to cover Bruce Chase's restitution obligation and attorney fees and to pay off Bruce and Janet Chase's credit card debt, because those advances are covered in the promissory note Bruce Chase executed in John Chase's favor. The promissory note itself represents a benefit to Bruce Chase because the note is not payable until Bruce Chase's death, although the interest rate on principal is substantial.

48. The benefits John Chase conferred upon Bruce and Janet Chase and their values include:

16

- He gave them the lot on which their Chase Hill Road house was built and sold them the residence at his company's cost to build it. The value of this benefit was substantial but not quantifiable.

- He provided them with free housing for more than five years in the lakeside home on Big Bear Point that now rents for $2,000 a month. The value of this benefit, which took the form of housing costs not incurred, and which should have enabled Bruce and Janet Chase to accumulate savings, was $120,000—more than the value of the $113,000 in sales proceeds they turned over to John Chase.

- He arranged for payment of their health insurance. The value of this benefit was $45,880.

- He arranged for his company to sell a truck to Bruce Chase for $1.00 and later made another truck worth $40,000 available for Bruce Chase's use. The value of this benefit cannot be quantified on the basis of the evidence.

- He gave Bruce and Janet Chase access to his Florida residence for weeks or months at a time. The value of this benefit was substantial but cannot be quantified based on the evidence.

49. All of the foregoing benefits are appropriately considered in the context of Bruce and Janet Chase's unjust enrichment claim, either because they involve the same property from the sale of which they turned over the $113,000 in proceeds, or

because they involve John Chase's side of the same agreement that gives rise to the unjust enrichment claim.

50. The total value of the benefit that John Chase conferred on Bruce and Janet Chase as part of his side of the agreement with them cannot be exactly quantified, but it was substantially in excess of the value of the $113,000 benefit that Bruce and Janet Chase conferred upon John Chase as part of their side of the agreement. (As noted above, the value of Bruce and Janet Chase's services is not counted because it was fully offset by the value of the compensation paid to them for those services).

51. Between Bruce Chase's pension and the salary he was paid, and in light of the fact that their health insurance, their housing and their Florida vacations did not cost them anything, Bruce and Janet Chase could and should have been able to save well over $113,000 during the five plus years they lived at Big Bear Point.

52. The record does not show or explain what happened to all the money that passed through Bruce Chase's hands during the 2010-16 period, in the form of his salary, his pension and the money he stole from his sister-in-law. The total amount unaccounted for is between a half million dollars and three quarters of a million dollars. The explanation that John Chase offers for where all that money went— that Bruce Chase gambled it away—was not corroborated in the evidence, but what did happen to it is not explained.

53. Considering all circumstances, the court finds and concludes that John Chase has not been enriched, much less unjustly enriched, at the expense of Bruce

18

and Janet Chase. Accordingly, the court concludes that Bruce and Janet Chase are not entitled to restitution for unjust enrichment.

54. These findings and conclusions make it unnecessary to address Plaintiff John Chase's other arguments.

*Conclusion*

IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1. Judgment is rendered in favor of Plaintiff John Chase against Defendant Bruce Chase on the Complaint. Plaintiff shall prepare and forward to Defendant Bruce Chase irrevocable designations of beneficiary for the life insurance policies listed in the complaint. If the irrevocable beneficiary forms provided are not executed and returned to Plaintiff within 30 days of when the judgment becomes final, the court will enter a motion under M.R. Civ. P. 60(b) to alter the judgment by means of an appointment of another person to execute the designations on behalf of the Defendant. *See* M.R. Civ. P. 70.

2. Judgment on the Counterclaim is awarded to Plaintiff John Chase. Plaintiff's oral motion for judgment made at the close of trial is dismissed as moot in light of this Decision and Judgment. *See* M.R. Civ. P. 50.

3. Plaintiff is awarded his costs as the prevailing party.

This is a final, appealable judgment for purposes of the Maine Rules of Civil Procedure and the Maine Rules of Appellate Procedure.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated August 20, 2018

A. M. Horton, Justice

Entered on the Docket: 8·2(·18

*John F. Chase vs. Bruce G. Chase, et al.* PORSC-CV-2016-0433

**Plaintiff's Counsel:**

Gene Libby, Esq.

Tyler Smith, Esq.

Libby O'Brien Kingsley & Champion

**Defs' Counsel:**

Sheilah McLaughlin, Esq.

Law Office of Sheilah McLaughlin

**STATE OF MAINE**                                        **SUPERIOR COURT**

**Cumberland, ss.**

JOHN F. CHASE

      Plaintiff and Counterclaim Defendant

v.                                                          Docket No. CUMSC-CV-16-0433

BRUCE G. CHASE

      Defendant and Counterclaim Plaintiff

STATE OF MAINE
Cumberland ss Clerk's Office

Dec ± ə 2011
1:53PM
RECEIVED

and

JANET CHASE

      Counterclaim Plaintiff

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case is before the court in connection with Plaintiff John F. Chase's Motion for Summary Judgment on All Pending Claims. Defendant and Counterclaim Plaintiff Bruce G. Chase and Counterclaim Plaintiff Janet Chase have filed a response, titled Answer to Motion for Summary Judgment, but have not filed any signed opposing affidavits or any statement in response to Plaintiff's statement of material facts.

The court elects to decide Plaintiff's Motion without oral argument. *See* M.R. Civ. P. 7(b)(7). Based on the entire record and for the reasons set forth herein, the Plaintiff's Motion is hereby granted in part.

1

*Background*

The underlying facts can be summarized as follows:

Plaintiff John F. Chase and Defendant/Counterclaim Plaintiff Bruce G. Chase are brothers. Counterclaim Plaintiff Janet Chase is Bruce Chase's spouse.

In 2015, Bruce Chase was convicted of a felony theft charge for misappropriating about $159,000. John Chase paid restitution of $159,000 on behalf of his brother and also paid off about $58,000 of credit card debt owed by Bruce and Janet Chase. In consideration for the payments made by John Chase on his and his wife's behalf, Bruce Chase executed a Secured Promissory Note dated May 1, 2015 for the principal amount of $228, 013.30, with interest at 8% annually. The Note recites that payment is due only upon Bruce Chase's death, and it is secured by four life insurance policies covering Bruce Chase as the named insured:

Primerica Insurance policy no. 0421725562

Maine Public Employees Retirement System Group Life Policy

CMFG Life Insurance Company Group Accidental Death Insurance Policy, Credit Union No. 018-0005-0, Certificate No. G2490467

Portland Maine Police Department Federal Credit Union, Association No. 018-0082-7, Certificate No. A4546809

The Note requires Bruce Chase to "immediately execute Beneficiary Designations which shall designate John F. Chase as the sole and irrevocable beneficiary of the above-named policies." The Note also requires Bruce Chase to make timely payment of all premiums due on the policies, and provides that, if John

2

Chase pays any premium, the amount paid will be added to the total principal due, with interest at 8%.

The Note contains a merger provision: "This Note sets forth the entire understanding of the Borrower and Lender with respect to the subject matter hereof and supersedes any prior agreement, representations or understandings related to the same."

John Chase's Complaint alleges that Bruce Chase has failed to execute the irrevocable designations of John Chase as beneficiary, as required by the Note. His Complaint alleges breach of contract and seeks specific performance and injunctive relief—a judgment requiring Bruce Chase to execute the designations and enjoining him from making any further changes in beneficiary on the four policies.

Bruce Chase responded to the Complaint with an answer and counterclaim, and his wife, Janet Chase, joined the action as a counterclaim plaintiff. Their New Amended Counterclaim alleges that John Chase is in breach of an agreement that he and Bruce and Janet Chase reached in 2009, with the following material terms:

- John Chase would provide Bruce and Janet Chase with housing in Naples, Maine, at no cost, for as long as they wished to live there;

- Bruce and Janet Chase would sell their home and turn over the proceeds to John Chase and move to the Naples property

- John Chase would employ Bruce Chase for as long as Bruce could work, and would employ Janet Chase to age 62

3

- John Chase would pay the cost of health insurance for Bruce and Janet Chase until they turned 65

- John Chase would provide accommodations in Florida for Bruce and Janet Chase during the winter months, at no cost to them

Bruce and Janet Chase's New Amended Counterclaim asserts that they fulfilled their side of the agreement, but that John Chase has breached his side of it. It asserts that John Chase is liable to Bruce and Janet Chase on grounds of promissory estoppel and unjust enrichment, and also seeks damages for breach of the agreement and for emotional distress.

For purposes of his Motion, John Chase has not disputed Bruce and Janet Chase's characterization of the agreement they say he made with them, although his memorandum notes that he denies that there was any such agreement.

*Standard of Review*

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995).

"[S]ummary judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can

4

affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

The Maine Rules of Civil Procedure prescribe the materials that both the party moving for summary judgment and the party opposing the motion must file. A party moving for summary judgment must file a statement of material facts with citations to the portions of the record relied on in the statement. *See* M.R. Civ. P. 56(h)(1). A party opposing a motion for summary judgment must file a responsive statement that admits, denies or qualifies each of the facts set forth in the moving party's statement. *See* M.R. Civ. P. 56(h)(2).

The moving party in this case, John F. Chase, has filed a motion and statement of material facts in compliance with the rule. The factual assertions in his statement of material facts are supported, in each instance, by citations to the record, primarily to the transcript of the deposition upon oral examination of Bruce Chase, which was filed with the Motion. John Chase has not filed his own or any other affidavit in support of the Motion.

However, the opposing parties, Bruce and Janet Chase, have not submitted a statement of material facts in compliance with the rule. Although they are representing themselves *pro se*, the law is clear that *pro se* litigants are held to the same standards as litigants represented by counsel, and are not afforded any special

consideration or excuse because they are appearing *pro se*. *See Estate of Turcic*, 2017 ME 118, ¶ 5, 164 A.3d 134, *citing Richards v. Bruce*, 1997 ME 61, ¶ 8, 691 A.2d 1223.

Bruce and Janet Chase's failure to file an opposing statement of material facts does not necessarily mean that John Chase's Motion for Summary Judgment must be granted. However, it does mean that they are deemed to have admitted the properly supported and admissible material facts contained in the statement of material facts filed with the Motion for Summary Judgment. *See Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 6, 721 A.2d 169.

The record references contained in John Chase's statement of material facts are mostly to the deposition testimony of Bruce Chase. Bruce Chase's testimony is admissible against him under M.R. Evid. 801(d) (admissions of a party opponent), and is admissible as to Janet Chase to the extent it is relevant and based on personal knowledge rather than hearsay.

*Analysis*

This analysis first examines whether Plaintiff John Chase has shown that he is entitled to summary judgment on the claim set forth in his Complaint, and then turns to whether he is entitled to summary judgment on Bruce and Janet Chase's New Amended Counterclaim.

1. Plaintiff John Chase's Claim

The Complaint in this case contends that Bruce Chase has failed to designate John Chase as the beneficiary on at least three of the four life insurance policies listed in the Note. John Chase's memorandum notes that he has been advised that Bruce

6

Chase has designated him as beneficiary on the CMFG policy, but John Chase asks that Bruce Chase be enjoined from attempting to alter or undo that designation.

The Note unambiguously requires Bruce Chase to execute irrevocable designations of John Chase as beneficiary on the four listed policies. The undisputed facts also indicate that John Chase is not currently designated as beneficiary on three of the four. The reason why he is not may be in dispute—Bruce Chase claims it is because John Chase's attorney did not handle the designation paperwork correctly. On the other hand, is also undisputed that Bruce refuses to correct the problem and designate John Chase as beneficiary.

As justification for his refusal, Bruce Chase cites to John Chase's breach of the agreement that is the subject of Bruce and Janet Chase's New Amended Counterclaim. However, that argument is barred by the merger provision in the Note. By executing the Note, Bruce Chase agreed that the Note superseded all prior agreements and contained the entire understanding of the parties relating to the Note.

Nothing in the Note allows Bruce Chase to refuse to designate John Chase as beneficiary if John Chase were in breach of an agreement that Bruce and Janet Chase say was made six years before Bruce Chase signed the Note. Moreover, it appears that, as of when he signed the Note on May 1, 2015, Bruce Chase already knew that John Chase was not acting in accordance with the agreement that Bruce and Janet Chase claim he had made back in 2009. Accordingly, any breach by John Chase of the alleged agreement that is the basis for the New Amended Counterclaim does not

7

justify Bruce Chase in refusing to execute an irrevocable designation of John Chase as sole beneficiary of the four policies.

Even if the changes in beneficiary did not go through because John Chase's attorney did not handle the paperwork properly, it is undisputed that John Chase has not been named as beneficiary on three of the four policies.[1]

For these reasons, John Chase's Motion for Summary Judgment will be granted as to the claims in his Complaint.

2. The New Amended Counterclaim

The sole basis recited in Plaintiff John Chase's memorandum in support of his Motion for Summary Judgment is that the agreement alleged in the New Amended Counterclaim is barred by the Statute of Frauds. *See* 33 M.R.S. 51. The statute provides, in part:

No action shall be maintained in any of the following cases:
. . .
4. Contract for sale of land. Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them;

5. Agreement not to be performed within one year. Upon any agreement that is not to be performed within one year from the making thereof;
. . .
unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise.

---

[1] John Chase is apparently not seeking any damages for Bruce Chase's delay in executing the designations, so the reason for any originally executed designation not taking effect is irrelevant.

John Chase contends that the agreement alleged in the New Amended Counterclaim is subject to the Statute of Frauds because it could not be performed within one year and because it involves an interest in real property. He also notes that Bruce and Janet Chase have not established that the alleged agreement was documented or memorialized.

The agreement that Bruce and Janet Chase say they made with John Chase in 2009 clearly could not be fully performed within one year, and it also relates to interests in real estate, so it falls within the Statute of Frauds.

However, one aspect of the New Amended Counterclaim that John Chase's filing does not address is the contention—described in detail by Bruce Chase at his deposition—that he and Janet Chase have performed their side of the agreement, by leaving their jobs, selling their home and turning the sales proceeds over to John Chase, in reliance on the agreement. Part performance of an oral contract that would be subject to the Statute of Frauds can give rise to promissory estoppel. *See Sullivan v. Porter*, 2004 ME 134, ¶¶ 10-11, 861 A.2d 625. In *Sullivan*, the Law Court defined the burden of persuasion when a party seeks to enforce an oral contract that the Statute of Frauds requires to be in writing:

> [T]o remove the contract from the operation of the statute of frauds pursuant to this doctrine, the party seeking to enforce the contract must establish by clear and convincing evidence (1) that the parties did enter into a contract; (2) that the party seeking to enforce the contract partially performed the contract; and (3) that the performance was induced by the other party's misrepresentations, which may include acquiescence or silence.

9

2004 ME 134 at ¶11, 861 A.2d 625, *citing Cottle Enters., Inc. v. Town of Farmington,* 1997 ME 78, P17 n.6, 693 A.2d 330, 335-36; *Goodwin v. Smith,* 89 Me. 506, 508, 36 A. 997, 998 (1897); *Woodbury v. Gardner,* 77 Me. 68, 70 (1885).

Bruce Chase's deposition testimony could be considered sufficient to establish all three elements. He asserts that he and Janet Chase did enter into an agreement with John Chase; that they partly performed, by selling their house and turning over the sale proceeds to John Chase and also by leaving their jobs, all in reliance on John Chase's representation that he would perform his side of the agreement. At the summary judgment stage, the court has to view his testimony in a light most favorable to Bruce and Janet Chase.

In that light, given that John Chase is now challenging the enforceability of the alleged agreement, the finder of fact could view his alleged promise to perform his side of the agreement as a misrepresentation for purposes of the part performance doctrine. *See Woodbury,* 77 Me. at 70 ("After having induced or knowingly permitted another to perform in part an agreement, on the faith of its full performance by both parties and for which he could not well be compensated except by specific performance, the other shall not insist that the agreement is void").

In addition, even assuming that the oral contract is unenforceable under the Statute of Frauds, the Statute of Frauds would not bar Bruce and Janet Chase's unjust enrichment claim. *See Estate of White,* 521 A.2d 1180, 1181 (Me. 1987); *Cressey v. Cressey,* 2012 Me. Super. LEXIS 115, at *3 (Cum. Cty., Warren, J.). In fact, the unjust enrichment remedy comes into play in situations where an express contract is unenforceable for reasons such as the Statute of Frauds.

10

Viewing the summary judgment record in a light most favorable to Bruce and Janet Chase, the court cannot say that they would not be entitled to restitution for unjust enrichment and possibly other relief based on the part performance doctrine.

For these reasons, John Chase's Motion For Summary Judgment will be denied as it relates to the New Amended Counterclaim.

Based on the entire record, it is ORDERED AS FOLLOWS:

1. Plaintiff's Motion for Summary Judgment is granted as it relates to the Complaint, and is denied as it relates to the New Amended Counterclaim. This is an interlocutory ruling that cannot be appealed at this time because the New Amended Counterclaim remains pending. The form of judgment on the Complaint will be determined as of final judgment.

2. Trial on the New Amended Counterclaim will be scheduled during the court's next available civil trial term. The parties will exchange updated witness and exhibit lists, and shall mark and exchange their exhibits, no later than 10 days before the trial. A party's failure to exchange a copy of any trial exhibit will likely result in that exhibit being excluded from the evidentiary record.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated December 15, 2017

_____
A. M. Horton, Justice

11

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.

JOHN F. CHASE

     Plaintiff and Counterclaim Defendant

    v.                                        Docket No. CUMSC-CV-16-0433

BRUCE G. CHASE

    Defendant and Counterclaim Plaintiff



STATE OF MAINE
Cumberland ss. Clerk's Office

MAR 22 2017

RECEIVED

JANET CHASE

    Counterclaim Plaintiff

## ORDER ON MOTION AND DISCOVERY

This case came before the court for a hearing on the Motion To Join Additional Parties and to Reinstate New Amended Counterclaim filed by Defendant and Counterclaim Plaintiff Bruce Chase and proposed Counterclaim Plaintiff Janet Chase, and also for a discovery conference requested by Plaintiff and Counterclaim Defendant John Chase. Participating were attorney Smith representing John Chase, and Bruce Chase, representing himself. Janet Chase did not participate.

Initially, the court noted that the copy of the promissory note attached to John Chase's complaint against Bruce Chase does not contain a provision permitting acceleration upon breach or default, raising doubt as to whether John Chase would be entitled to judgment for the entire amount of the note, even if he prevails on the merits of his claim for breach of contract. *See Hills v. Gardiner Savings Institution*, 309 A.2d 877, 882-83 (Me. 1973).[1]

---

[1] Moreover, because the note recites that payment is due only upon the death of Bruce Chase, there may be a question as to whether there is any cause of action. *See id.* at 883 ("[N]o cause of action exists for an installment payment until such installment is due").

1

*Motion To Join Additional Parties and to Reinstate New Amended Counterclaim*

Initially the pending Motion To Join Additional Parties and to Reinstate New Amended Counterclaim was discussed. Plaintiff has objected, mainly because the Motion purports to join two corporate entities, identified as Chase Custom Homes & Finance and Auto Shine Car Wash, as counterclaim defendants, but the proposed Amended Counterclaim does not appear to state any actual claim against either. During the discussion, Bruce Chase confirmed thst he and Janet Chase contend that John Chase has breached various promises and commitments to them, and that they are not contending that either of the corporate entities is liable to them. Bruce Chase said the two entities were named because John Chase used them to make certain payments to Bruce and/or Janet Chase. Based on that clarification, the court is granting the Motion to the extent of permitting Bruce and Janet Chase to assert the Amended Counterclaim against John Chase only. The Motion is denied to the extent it purports to add the two corporate entities as counterclaim defendants.

*Discovery*

John Chase has propounded interrogatories and document requests to Bruce Chase, which have not yet been responded to. After discussion, it was agreed that John Chase will withdraw the pending discovery and will submit a new set of interrogatories and document requests to both Bruce and Janet Chase, for both to answer to the best of their ability. The new discovery will likely be similar, but not necessarily identical, to what was already requested. Bruce and Janet Chase will have 21 days from when they receive the new discovery to respond to the document request and to submit answers under oath to the interrogatories.

IT IS ORDERED:

(1) The Motion of Bruce and Janet Chase To Join Additional Parties and to Reinstate New Amended Counterclaim is granted in part as stated above and is otherwise denied.

(2) Discovery to proceed as indicated above.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 22, 2017

_____
A. M. Horton, Justice

3

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101


BRUCE CHASE
JANET CHASE
156 REGAN LANE
PORTLAND, ME 04103


CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101


TYLER SMITH, ESQ
GENE LIBBY, ESQ
LIBBY O'BRIEN KINGSLEY & CHAMPION
62 PORTLAND RD, STE 17
KENNEBUNK, ME 04043